INTERNATIONAL UNION, UAW, et al., Plaintiffs,

v.

NATIONAL RIGHT TO WORK LEGAL DEFENSE AND EDUCATION FOUNDATION, INC., et al., Defendants.

Civ. A. No. 839–73.

United States District Court, District of Columbia.

April 19, 1984.

As Amended April 20 and April 27, 1984.

Joseph L. Rauh, Jr., John Silard, James C. Turner and Mary M. Levy of Rauh, Silard & Lichtman, and Stephen I. Schlossberg and Michael T. Leibig of Zwerdling, Schlossberg, Leibig & Kahn, Washington, D.C., for plaintiffs.

James P. Schaller, Kenneth Parkinson, Thomas S. Jackson and Patricia D. Gurne of Jackson & Campbell, Washington, D.C., and David T. Bryant and Rex H. Reed of the National Right to Work Legal Defense Foundation, Inc., Springfield, Va., and Conrad K. Harper and Robert I. Bodian of Simpson, Thacher & Bartlett, New York City, for defendants.

Glenn H. Carlson of Perito, Duerk & Carlson, Godfrey P. Schmidt, Washington, D.C., for intervenor defendants Gerald Marker, et al.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

On May 1, 1973, plaintiffs filed a complaint alleging that defendants violated § 101(a)(4) of the Labor-Management Reporting & Disclosure Act (LMRDA) which prohibits interested employers from financing, encouraging or participating in actions by a union member against his union or union officers except as a party to the litigation. 29 U.S.C. § 411(a)(4) (1976)[1].

1. 29 U.S.C. § 411(a)(4) provides:
(4) Protection of the right to sue.—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member be required to exhaust

Since the plaintiffs filed this action, this case has had a long history which includes several published decisions by this Court, two published decisions by the United States Court of Appeals for the District of Columbia Circuit, and a pending appeal to the D.C. Circuit on the issue of the propriety of a jury demand in this matter. The Court presently has before it cross motions for summary judgment.

In order to understand the nature and complexity of this case, it is necessary to briefly outline the litigation history of this case. The complaint was filed by the International Union of the United Automobile Workers of America and nine other labor unions to restrain defendants National Right to Work Committee ("the Committee") and National Right to Work Legal Defense and Education Foundation ("the Foundation") from financing and supporting legal actions brought by workers against the plaintiff unions as long as defendants continued to receive contributions and support from "interested employers." *See International Union, UAW v. National Right to Work Legal Defense and Education Foundation, Inc.*, 366 F.Supp. 46, 47 (D.D.C.1974). In addition, plaintiffs sought to require the Committee and the Foundation to file with the Secretary of Labor, pursuant to 29 U.S.C. § 433(b)(1), reports containing statements of any agreements or arrangements with contributing employers for the purpose of supporting any activities designed to affect the decisions of workers whether or how to exercise their rights to organize and bargain collectively. *Id.*

In its first published opinion in this case, the Court held that the plaintiff unions were "persons" within the meaning of the LMRDA and therefore had standing to protect their right to be free from employee lawsuits supported by "interested" employers. 366 F.Supp. 46, 48 (D.D.C.1974). Additionally, the Court held that the plaintiffs had standing to obtain enforcement of the reporting requirements of 29 U.S.C. § 433(b)(1). *Id.* at 49–50. Several months later, the Court interpreted § 411(a)(4) of the LMRDA to prohibit interested employers from financing *any* lawsuit by an employee against his union rather than just lawsuits where an employee alleges a violation arising under §§ 411(a) or (b) of the LMRDA.[2] *See* 376 F.Supp. 1060, 1064 (D.D.C.1974). That same day, in an unpublished opinion, the Court granted plaintiffs' Motion to Compel the disclosure by the defendant Foundation of the amounts contributed to the Foundation by persons listed on its business advisory board, the names of 37 companies who had given more than $500 in 1972, and the names of 37 companies drawn at random from those contributing between $100 and $500 in 1972. *See* Memorandum Opinion of June 5, 1974. Defendants sought a writ of mandamus and asked the United States Court of Appeals for the D.C. Circuit to vacate the order compelling discovery, and dismiss the action for lack of subject matter jurisdiction or because of the alleged unconstitutionality of the statute's restriction on Foundation activities. The Court of Appeals held that mandamus would not lie. *See* 510 F.2d 1239 (D.C.Cir.1975), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671 (1975). On January 26, 1976, the Court entered several Rule 37 sanction orders, because of the failure of the defendants to comply with the Court's orders to disclose to the plaintiff unions the names of their contributors. As the Court recognized in its published decision of June 2, 1977, 433 F.Supp. 474, 481 (D.D.C.1977), these orders, which deemed established

reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly, or indirectly finance, encourage, or participate in, except

as a party, any such action, proceeding, appearance, or petition.

2. §§ 411(a) and (b) preserve for the members of labor organizations certain rights such as equal voting privileges for officers, freedom of speech and assembly, and the right to sue. 29 U.S.C. §§ 411(a), (b).

those facts that it would have been unjust and unfair to require plaintiffs to prove, established:

(I) That a majority of the financial contributors to the defendant Foundation are employers who (1) have contracts or other relationships with some of the plaintiff unions herein; (2) are in the same lines of business in which some of the plaintiff unions herein engage in organization; (3) have union security agreements of their own whose validity or operation may be affected by suits which the defendant Foundation is supporting; (4) have contributed to the anti-union activities of the defendant Committee; and (5) have in other ways manifested their opposition to organized labor.

(II) That such employers have a concrete interest in and would be affected by the lawsuits set forth by plaintiffs in their complaint.

(III) That a majority of the defendant Foundation's funds derive from the contributions of such employers.

(IV) That the financial contributions made by such employers to the Foundation have been given by the Foundation to the plaintiffs in the lawsuits set forth in the complaint for the purposes of financing and encouraging said litigation.

(V) The Foundation (aided by the Committee) has financed, encouraged, managed and participated (other than as a party) in suits instituted by employees and members of labor organizations, which challenge their financial obligations to the union which is their collective bargaining representative. In those activities, the Foundation has been acting as an agent and conduit for employers interested in promoting such suits in order to (1) promote their self-interest in restricting the permissible scope of legality of union security provisions to which they have agreed, been asked to agree, or expect to be required to agree; (2) weaken the dues resources of labor organizations with which they have or anticipate having collective bargaining or other relationships; and (3) generally establish legal limitations on union security

and union political activities which enhance union strength vis-a-vis such employers.

This Court held that the above facts established that the Foundation had violated § 411(a)(4) of the LMRDA. 433 F.Supp. at 481. In addition, however, the Court held that § 411(a)(4), as applied to the defendants, was unconstitutional because it violated the First Amendment rights of the Foundation and its contributors. 433 F.Supp. at 483. Finally, the Court held that the plaintiffs could not enforce the reporting requirements of § 433(b)(1) of the LMRDA through the use of a private right of action against the allegedly noncomplying employers. *Id.*

The plaintiffs appealed this decision to the D.C. Circuit which affirmed in part and reversed in part. The Circuit held that this Court properly determined that no private right of action existed under § 433(b)(1) of the LMRDA. 590 F.2d 1139, 1155 (D.C.Cir. 1978). With respect to § 411(a)(4), the D.C. Circuit did not reach the constitutional issue, but instead gave the interested employer provision a narrowing construction so that the provision would "not apply to legitimate activity of a bona fide, independent legal aid organization ...." *See* 590 F.2d at 1151. Since the D.C. Circuit felt that this Court "made no findings of undisputed fact concerning whether the Foundation is a bona fide, independent legal aid organization," 590 F.2d at 1151, the case was remanded to this Court for further development of the record on this issue. Finally, with respect to the Rule 37 sanction orders entered by this Court, the D.C. Circuit held that the unions should have been required to attempt to seek the contributors' names from other sources before the Foundation was compelled to release that information. As such, the Rule 37 sanction orders were vacated. 590 F.2d at 1153.

Following the decision of the Court of Appeals, plaintiff unions sought discovery, and obtained information from alternative sources. On March 31, 1983, this Court denied a motion for summary judgment

made by defendants, denied plaintiffs' renewed request for the discovery of constitutionally protected information, and ordered the defendants to answer all questions in discovery to which constitutional objections had not been interposed. 559 F.Supp. 569 (D.D.C.1974).

After additional discovery proceedings, both plaintiffs and defendants moved for summary judgment. On August 31, 1983, this Court, upon motion by all parties, suspended the trial schedule in this case until the disposition of the cross-motions for summary judgment. Both plaintiffs and defendants agree that the case should be disposed of through the entering of summary judgment. *See* Joint Motion For Suspension of Trial Schedule, filed August 29, 1983. Such is the task for this Court, and after careful consideration of the cross-motions for summary judgment, the respective oppositions thereto, supplemental memoranda, and the entire record herein, the Court determines that it is appropriate to grant defendants' motion for summary judgment.

## THE LAW OF THE CASE MANDATES A DETERMINATION OF WHETHER INTERESTED EMPLOYERS CONTROL THE LITIGATION ACTIVITIES OF THE FOUNDATION

Defendants are correct in noting that it is a fundamental rule of appellate practice that an appellate court decision "settles all questions that were before the court and disposed of by it, and becomes the 'law of the case' for the lower court in subsequent proceedings ...." 14A *Cyclopedia of Federal Procedure* § 69.25 (3d ed. revised 1965); *Defendants Memorandum in Support of Their Motion for Summary Judgment at p. 7.* By adhering to the "law of the case", a court gives continuing effect to a ruling made earlier in the same litigation. *In re Multi-Piece Rim Products Liability Litigation,* 653 F.2d 671, 678 (D.C. Cir.1981).

With respect to the task of this Court on remand, there is clear "law of the case" from the Court of Appeals. The D.C. Circuit held, in unequivocable terms that the "interested employer" proviso of § 411(a)(4) of the LMRDA "does not apply to legitimate activity of a bona fide, independent legal aid organization ...." 590 F.2d at 1151. Plaintiffs and defendants disagree as to the legal standard to be applied by this court in determining whether the Foundation is such an organization. Plaintiffs assert that "a front for anti-labor, employer interests cannot be a bona fide, independent legal aid organization ...." *Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment* at p. 5. Defendants contend that under the "law of the case", it must be shown that interested employers *control* the Foundation's legal aid activity through a "sham" or "cover entity." *Defendants' Reply Memorandum In Support of Their Motion for Summary Judgment* at p. 2.

A careful reading of the Court of Appeals decision in this case reveals, as defendants suggest, that before the Foundation can be found not to be an independent organization, some *control* by the employers over the subject litigation must be shown. In several parts of the opinion, the Court of Appeals tells this Court what factors are important and what issues may be determinative of whether an organization is a "bona fide, independent legal aid organization." The Court of Appeals did an extensive analysis of the sparse legislative history of § 411(a)(4) and determined that Congress used this section as an attempt to protect a union member who may be engaged in a dispute with a labor organization from employers who might lead them into actions contrary to their best interests. 590 F.2d at 1149. The Court noted:

> We think Congress wanted to deny employers the power to cause harrassing suits or otherwise to create divisions in the unions with which they had relationships.

590 F.2d at 1151.

With these goals in mind, the Court of Appeals then recognized that:

> As long as legal aid activity is not controlled by interested employers or em-

ployer associations, is not undertaken at the behest of such employers, does not permit such employers to get involved in union member suits, and cannot otherwise be imputed to such employers, the danger that employees will be coerced or misled during the initiation or maintenance of lawsuits against their unions is significantly diminished. 590 F.2d at 1150. The Court also noted that without control or employer involvement with the litigation program, the employers do not have the power to create divisions in the unions. 590 F.2d at 1151.

In an even clearer statement of the importance of employer control or specific employer participation, the Court of Appeals specifically mentioned that one of the reasons the facts established in the Rule 37 sanction orders failed to resolve the issue, was that this Court had not made findings of fact on such matters as "whether the Foundation's litigation program was controlled by interested employers, or whether it allowed employer involvement in union member suits." 590 F.2d at 1151 n. 18. These are the dispositive determinations that the Court must review today when considering the cross-motions for summary judgment.

## THE FOUNDATION IS A BONA FIDE, INDEPENDENT LEGAL AID ORGANIZATION BECAUSE INTERESTED EMPLOYERS DO NOT CONTROL ITS LITIGATION ACTIVITIES

The Court has undertaken an extensive review of the parties' pleadings, the Statements of Facts Not In Dispute, and the many affidavits, and documents submitted in support of the cross motions for summary judgment. When a motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth *specific facts showing that there is a genuine issue for trial.*" Fed. R.Civ.P. 56(e); *Proctor v. State Farm Mutual Insurance Co.,* 675 F.2d 308, 317 (D.C.Cir.1982). In this case, plaintiffs "have all the discovery they are going to

get." *Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment* at p. 4. After the close of discovery, plaintiffs have still been unable to set before this Court any facts tending to show that the Foundation's litigation activities are controlled by interested employers, or any pleadings tending to dispute crucial material facts set forth in Defendants' Statement of Material Facts Not In Dispute.

Despite the large quantity of paper filed by the plaintiffs in this case in support of their motion for summary judgment, and in opposition to the defendants' motion, plaintiffs do not present a single fact tending to dispute the following conclusions, supported by defendants' submissions:

1) Foundation participation in pending or potential litigation is initiated by an employee request for assistance. Each request is evaluated by the Legal and Executive Staffs of the Foundation on criteria established by the Board of Trustees. Neither the Foundation's Advisory Council nor any group of financial contributors determines in which cases the Foundation will participate. Reed Affidavit at ¶¶ 2, 4; Larson Affidavit at ¶ 4.

2) Litigation decisions are made by the Foundation staff attorneys without any outside control of the Foundation Advisory Council or any group of financial contributors. Reed Affidavit at ¶¶ 2, 5; Larson Affidavit at ¶ 5.

3) Contributions received by the Foundation are all placed in a general account and are not pledged for use in a particular case or for cases involving particular issues. Reed Affidavit at ¶ 6; Larson Affidavit at ¶ 6.

4) Allocations of funds are made by the Legal and Executive Staffs of the Foundation based upon the availability of funds and the needs of case management. These decisions are not subject to the control of the Foundation's Advisory Council or its contributors. Reed Affidavit at ¶¶ 2, 6, 7; Larson Affidavit at ¶ 7.

5) Litigation decisions are made by Foundation staff attorneys. These deci-

sions are made free of outside control of the Advisory Council, any individual or group of financial contributors. Reed Affidavit at §§ 2, 5; Larson Affidavit at ¶ 5.

6) The Foundation was created by the Committee. The Committee conducts legislative activities while the Foundation conducts litigation activities.[3] The Committee and the Foundation are separate corporate entities and have separate accounts. *Plaintiffs' Statement of Genuine Issues and Response to Defendants' Statement of Material Facts* at p. 15; *Defendants' Statement of Material Facts As To Which There Is No Genuine Issue* at p. 5.

Despite the many depositions that plaintiffs have taken, they have still failed to show one instance of interested employer control or participation in the litigation program decision-making process. Plaintiffs rely on the fact that the Foundation's activities must be "imputed" to interested employers because "money is funnelled into the lawsuits of union members by a front for anti-labor, employer interests." *Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment* at pp. 9, 39–43. This argument fails for two reasons. First, as discussed above, it is undisputed that money is not given to the Foundation for a particular case and one general fund is maintained from which money is allocated by the legal and executive staffs of the Foundation. Second, the Court of Appeals has specifically rejected the notion that the LMRDA can be applied to the Foundation simply because it is financed by interested employers:

> Our review of the legislative history convinces us that Congress did not intend the second proviso to section 101(a)(4) to apply to the legitimate litigation program of a bona fide, independent legal aid organization, *even though the organization receives contributions from interested employers.*

590 F.2d at 1150 (emphasis added).

Plaintiffs also submitted a 200-plus page summary of facts they allege support the granting of summary judgment in their favor. After a thorough review of the summary, the Court concludes that while the allegations contained therein may raise issues of fact concerning whether those in control of the Foundation are generally sympathetic to employers' interests, whether the Foundation relies primarily on employer contributions, and whether the Foundation's positions on issues are in agreement with the interests of employers, there is still no factual evidence tending to dispute the facts and sworn testimony indicating that interested employers *do not* control the specific litigation activities of the Foundation. In fact, plaintiffs' submissions show little more than what this Court found in its initial Rule 37 sanction orders which were found by the Court of Appeals to be insufficient to show that the Foundation was not a "bona fide, independent legal aid organization." Plaintiffs have not proffered a single fact that indicates employer control in the selection or management of Foundation lawsuits.

## CONCLUSION

Given the recent Court of Appeals mandate to this Court to make findings of fact on "control" in determining whether the Foundation is a "bona fide, independent legal aid organization", and given the failure of plaintiffs to dispute dispositive issues of material fact concerning the alleged control of the Foundation by interested employers, the Court has no choice but to grant defendants' motion for summary judgment. An order in accordance with

---

**3.** Since it is undisputed that the Foundation conducts the litigation activities, the Court's determination of the existence of a "bona fide, independent legal aid organization" must be made with specific reference to the Foundation rather than the Committee. The Court recognizes that plaintiffs claim that the Foundation is a "litigative analogue" to the Committee, but based upon the record and uncontroverted facts in this case, the Court determines that both the Committee and Foundation are "bona fide, independent legal aid organizations" with respect to the litigation activities at issue in this case.

the foregoing will be filed of even date herewith.