781 F.2d 928
 121 L.R.R.M. (BNA) 2369, 251 U.S.App.D.C.
75, 54 USLW 2419,
104 Lab.Cas. P 11,761
 INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, INC.,
et al., Plaintiffs-Appellants,
v.
NATIONAL RIGHT TO WORK LEGAL DEFENSE AND EDUCATION
FOUNDATION, INC., et al., Defendants-Appellees.
 Nos. 84-5322, 84-5348.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 11, 1985.
Decided Jan. 21, 1986.
 
 Appeal from the United States District Court for the District of Columbia (Civil Action No. 839-73).
 Laurence Gold, with whom Stephen I. Schlossberg and Michael T. Leibig were on brief, for plaintiffs-appellants.
 Conrad K. Harper, with whom Robert I. Bodian, James P. Schaller, Patricia D. Gurne, Rex H. Reed, and David T. Bryant were on brief, for defendants-appellees.
 Before MIKVA, GINSBURG, and BORK, Circuit Judges.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 This case concerns the scope and meaning of Section 101(a)(4) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. Sec. 411(a)(4) (1982). Although a part of the national labor law for over thirty years, Section 101(a)(4) has not been widely interpreted or used. These proceedings began twelve years ago and have been the subject of numerous discovery requests, objections, and orders, as well as several appeals to this court. Plaintiffs now appeal the district court's grant of summary judgment in favor of the two defendants, the National Right to Work Committee and the National Right to Work Legal Defense and Education Foundation. The court below concluded as a matter of law that despite ample opportunity to conduct discovery, plaintiffs had failed to create any triable issues of fact about whether the defendants' activities violated the LMRDA's prohibition against employer involvement in lawsuits between union members and their unions.
 
 
 2
 We find no errors of law or abuse of discretion. The district court correctly applied our earlier construction of the LMRDA provision at issue in this case. Therefore we affirm the district court's disposition of the parties' cross-motions for summary judgment. Had the facts of the case been different or had the parties pursued different litigating strategies, the interaction between the LMRDA's prohibition and the first amendment might have presented delicate and troubling constitutional and attorney-client privilege issues. As the instant case has developed, however, we are able to save the resolution of those difficulties for another day.
 
 I. BACKGROUND
 
 3
 The National Right to Work Committee ("the Committee") was organized in 1955 by a group of employers. In 1968, the Board of Directors of the Committee established the National Right to Work Legal Education and Defense Foundation ("the Foundation") as a spin-off from the Committee. The Committee now concentrates on educational projects and legislative activities. The Foundation's primary purpose is to render "free legal aid to workers who are suffering injustices from employment discrimination arising from compulsory unionism arrangements between their employer and a labor organization, and assisting such workers in protecting [their] rights." Defendants' Statement of Material Facts As to Which There is No Genuine Issue, p. 4. As a separate entity devoted to legal aid that does not engage in lobbying activities, the Foundation is tax-exempt under Sec. 501(c)(3) of the Internal Revenue Code, and contributions to it are tax deductible. See 26 U.S.C. Sec. 170 (1982). The method the Foundation uses to select some union members' cases for free legal assistance over others, the Foundation's conduct of these lawsuits, and the involvement of interested employers in these suits are the central issues in this case.II. PROCEEDINGS BELOW
 
 A. The 1973 Lawsuit
 
 4
 In May, 1973, the International Union of the United Automobile Workers of America and several other unions sued the Foundation and the Committee in the United States District Court for the District of Columbia. Plaintiffs alleged that defendants had violated the LMRDA's prohibitions against employer involvement in actions by a union member against his union or an officer of the union. Section 101(a)(4) of the LMRDA, codified at 29 U.S.C. Sec. 411(a)(4) (1982), provides:
 
 
 5
 No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding.... No interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.
 
 
 6
 Federal safeguarding of union members' right to "organize, choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid or protection," 29 U.S.C. Sec. 401(a) (1982), is central to Section 101 of the Act. Part of this protection of workers includes the prohibition against an interested employer's financing, encouraging or participating in, except as a party, any judicial or administrative proceeding between a union member and a labor organization or its officers. The plaintiff unions in this case sought a permanent injunction restraining the Foundation from continuing its lawsuits and restraining the Committee from assisting the Foundation. In a separate cause of action, the unions also sought a declaratory judgment that the Foundation was violating Section 203(b)(1) of the LMRDA, 29 U.S.C. Sec. 433(b)(1). This statute requires all persons to report to the Secretary of Labor on any agreements made with employers concerning efforts to influence employees' exercise of their collective bargaining rights.
 
 
 7
 B. Scope of Discovery and Assertions of Privilege
 
 
 8
 The district court denied defendants' motion to dismiss for failure to state a cause of action. International Union, UAW v. National Right to Work Legal Defense and Education Foundation, 366 F.Supp. 46 (D.D.C.1974). During pretrial discovery, defendants refused to disclose either the names and addresses of all employers and businesses that had contributed to the Foundation in 1972, or a list of contributions by companies whose officers or employees were members of the Foundation's Advisory Council. Defendants regarded this information as constitutionally privileged. The district court, however, granted plaintiff's motion to compel discovery. The court's order compelled disclosure by the Foundation of the identities of company donors whose officers or employees were members of the Advisory Council; the names of 37 companies that had donated more than $500 to defendants in 1971; and the names of 37 companies drawn at random from those contributing between $100 and $500 in 1972. Defendants sought a writ of mandamus from this Court to vacate the discovery order. We held, however, that mandamus to vacate the order compelling discovery did not lie. National Right to Work Legal Defense and Education Foundation v. Richey, 510 F.2d 1239 (D.C.Cir.) (per curiam), cert. denied, 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671 (1975).
 
 
 9
 C. Discovery Sanctions and 1977 Opinion by District Court
 
 
 10
 In 1976 the district court imposed discovery sanctions under Fed.R.Civ.P. 37(b)(2)(A). These sanctions resolved the following questions of fact against the defendants, who had refused to answer questions about these facts:
 
 
 11
 (I) That a majority of the financial contributors to the defendant Foundation are employers who (1) have contracts or other relationships with some of the plaintiff unions herein; (2) are in the same lines of business in which some of the plaintiff unions herein engage in organization; (3) have union security agreements of their own whose validity or operation may be affected by suits which the defendant Foundation is supporting; (4) have contributed to the anti-union activities of the defendant Committee; and (5) have in other ways manifested their opposition to organized labor.
 
 
 12
 (II) That such employers have a concrete interest in and would be affected by the lawsuits set forth by plaintiffs in their complaint.
 
 
 13
 (III) That a majority of the defendant Foundation's funds derive from the contributions of such employers.
 
 
 14
 (IV) That the financial contributions made by such employers to the Foundation have been given by the Foundation to the plaintiffs in the lawsuits set forth in the complaint for the purposes of financing and encouraging said litigation.
 
 
 15
 (V) The Foundation (aided by the Committee) has financed, encouraged, managed and participated (other than as a party) in suits instituted by employees and members of labor organizations, which challenge their financial obligations to the union which is their collective bargaining representative. In those activities, the Foundation has been acting as an agent and conduit for employers interested in promoting such suits in order to (1) promote their self-interest in restricting the permissible scope of legality of union security provisions to which they have agreed, been asked to agree, or expect to be required to agree; (2) weaken the dues resources of labor organizations with which they have or anticipate having collective bargaining or other relationships; and (3) generally establish legal limitations on union security and union political activities which enhance union strength vis-a-vis such employers.
 
 
 16
 590 F.2d 1139 at 1146-47.
 
 
 17
 Despite these factual conclusions, however, the district court dismissed the union's claims against the defendants in 1977. International Union, UAW v. National Right to Work Legal Defense and Education Foundation, 433 F.Supp. 474 (D.D.C.1977), aff'd in part and vacated in part, 590 F.2d 1139, 1153-55 (D.C.Cir.1978). Based on the facts established by sanction, the court found that the Foundation had indeed violated the LMRDA's prohibition on interested employer involvement in union-member lawsuits. However, the court held that this prohibition, as applied to the Foundation, infringed defendants' first amendment right to expression in the form of legal assistance rendered by associations and their supporters. See NAACP v. Button, 371 U.S. 415, 428-30, 83 S.Ct. 328, 335-36, 9 L.Ed.2d 405 (1963). The prohibition and any complaint based upon it therefore could not stand. The court also held that the plaintiffs could not enforce the reporting requirements of Section 433(b)(1) of the LMRDA through a private suit against the allegedly non-complying employers. 433 F.Supp. at 483-84.
 
 D. The Previous Appeal
 
 18
 On appeal, we affirmed the lower court's finding that no private right of action to enforce the LMRDA's reporting requirements existed under Section 433(b)(1). That lower court decision is therefore not on appeal in the present proceedings. This court also placed a narrowing construction on Section 101(a)(4), holding that it could be applied to the Foundation without constitutional difficulties only if the unions demonstrated that the Foundation was not a bona fide, independent legal aid organization. 590 F.2d at 1147-48. We then articulated a test for whether an organization is an independent legal aid organization. We reasoned that Congress' concern in prohibiting employer financing of employee suits against unions was to prevent employers from coercing employees into bringing suits for employers' self-interest, as well as to stop sham or harassing suits against unions. Id. at 1149 & n. 14. We therefore held that the LMRDA's prohibition applied only if interested employers exercise control over the Foundation's litigation program:
 
 
 19
 As long as legal aid activity is not controlled by interested employers or employer associations, is not undertaken at the behest of such employers, does not permit such employers to get involved in union member suits, and cannot otherwise be imputed to such employers, the danger that employees will be coerced or misled during the initiation or maintenance of lawsuits against their unions is significantly diminished.
 
 
 20
 Id. at 1150. In other words, Congress did not intend Section 101(a)(4) to apply to the "legitimate litigation program of a bona fide, independent legal aid organization, even though the organization receives contributions from interested employers." Id.
 
 
 21
 Since the district court "made no findings of undisputed fact concerning whether the Foundation is a bona fide, independent legal aid organization," id. at 1151, we remanded the case. We directed the district court to examine the nature and activities of the Foundation to determine whether it was a bona fide, independent legal aid organization.
 
 
 22
 Aware of the sensitive constitutional issues that discovery raised in this case, we also instructed the district court to make two inquiries before compelling discovery. First, we directed the court to determine whether the information sought could be discovered through alternative sources and whether the party seeking disclosure had made reasonable attempts to obtain the information elsewhere. Second, we ordered the court to determine whether the information sought went to the heart of the lawsuit. Id. at 1152. As to the discovery sanction orders, we held that the district court should have required the unions to seek the contributors' names from other sources before compelling the Foundation to release that information. Therefore we vacated the Rule 37 sanctions. Id. at 1153.
 
 E. Proceedings on Remand
 
 23
 On remand, the parties conducted extensive discovery. See infra Part III. On March 31, 1983, the court denied defendants' motion for summary judgment, denied plaintiffs' renewed request for discovery of information that arguably was constitutionally protected, and ordered defendants to answer all questions in discovery to which they had not raised constitutional objections. After additional discovery proceedings, both plaintiffs and defendants moved for summary judgment. The court suspended the trial schedule pending disposition of these motions.
 
 
 24
 In 1984, the court granted summary judgment in defendants' favor. The court held that the unions had failed to produce any evidence that, under the "interested employer test" announced by this court in 1978, the Foundation was not a bona fide, independent legal organization. International Union, UAW v. National Right to Work Legal Defense and Education Foundation, 584 F.Supp. 1219, 1223-24 (D.D.C.1984). The unions now appeal that grant of summary judgment. Defendants cross-appeal for the right to a jury trial on remand in the event that this court reverses the district court.
 
 
 25
 The ultimate issue before us is whether the relationship of employers and employer associations to the Foundation's litigating activities, as shown by the extensive trial record, is sufficiently attenuated as a matter of law to fall outside the LMRDA's ban on employer involvement in suits by union members. After reviewing the record of proceedings in the district court and the parties' contentions on appeal, we are satisfied that no material issues of fact remained for trial. Accordingly, the case was ripe for summary judgment, and the district court correctly resolved the employer control issue in favor of defendants.
 
 III. APPROPRIATENESS OF SUMMARY JUDGMENT
 
 26
 Summary judgment is proper if no genuine issue as to a material fact remains. See Fed.R.Civ.P. 56(c). Invoking this standard, plaintiffs contend that the district court erred in granting summary judgment to defendants because some of plaintiffs' discovery requests were still outstanding. In evaluating this argument, we accept the appellate responsibility to review de novo a district judge's grant of summary judgment. See Callahan v. Woods, 736 F.2d 1269, 1272 (9th Cir.1984). The reviewing court examines the record, as the trial court did, to determine if there exists a genuine issue as to a material fact. See United States v. Diebold, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Fink v. National Savings and Trust, 772 F.2d 951, 955 (D.C.Cir.1985). The existence of genuine issues, however, may not be shown by mere allegations or denials in the adverse party's pleadings. The party opposing summary judgment must plead specific facts. See Fed.R.Civ.P. 56(e); Proctor v. State Farm Mutual Automobile Insurance Co., 675 F.2d 308, 317 (D.C.Cir.1982). Our examination of the district court's handling of pretrial discovery in this case leads us to conclude that the plaintiffs received adequate and substantial opportunities to uncover specific facts that would warrant a trial, but could not or did not make use of these opportunities. Accordingly, we agree with the district court that the case was ready for summary judgment.
 
 
 27
 When this case was remanded in 1978, the district judge faced the difficult task of compiling a record on whether the Foundation is a bona fide, independent legal aid organization while preventing discovery that would infringe on defendants' constitutional rights. The trial court exercised its sound discretion in balancing these competing interests.
 
 
 28
 One post-remand round of paper exchange illustrates the difficulties that the district court successfully surmounted. In 1979 plaintiffs filed additional interrogatories and requests for production. Defendants refused to respond to the vast majority of the interrogatories concerning their membership, funding, associations, correspondence, and activities. The district court required answers within thirty days, and defendants' appeal to this court was denied. Defendants then provided supplemental responses to the interrogatories. Plaintiffs filed additional interrogatories, and moved for an order to show cause why defendants should not be held in contempt. The district court denied the motion as premature, and ordered the parties to submit memoranda on the following issues: 1) was the information plaintiffs sought necessary?; 2) if the information was necessary, had plaintiffs exhausted all of the alternative sources?; and 3) if the information was necessary and unavailable from other sources, could procedural protections against its disclosure to third parties be devised? After reviewing the parties' submissions, the district court in April 1980 ordered defendants to answer each interrogatory in dispute within fourteen days. Defendants refused to answer further. Proceedings continued at a leisurely pace, and the court in 1981 ordered defendants to provide an index of the material it had submitted in response to plaintiffs' post-appeal discovery efforts. The court also ordered the plaintiffs to conduct the following discovery:
 
 
 29
 1. discovery of a representative sample of the members of the Foundation's Advisory Council;
 
 
 30
 2. discovery of a representative sample of the employers of the employee-plaintiffs in the twenty-one lawsuits allegedly financed through the Foundation with interested employer money; and
 
 
 31
 3. any and all other discovery necessary to determine whether or not defendant Foundation is a bona fide, independent legal aid organization.
 
 
 32
 Discovery continued, and plaintiffs then moved for an extension of time to complete discovery. The district court allowed plaintiffs forty-five days from its June 15, 1981 order to complete discovery. The plaintiffs were required to submit interrogatories to or depose a representative sampling of members of the Advisory Council and employers of the employee-plaintiffs. A year later, the district court found that the plaintiff unions "still have not shown that they have made a genuine effort to obtain the information they desire from sources other than the defendant Foundation itself." The court ordered the unions to attempt to obtain this information from the employers connected with lawsuits in which the Foundation was involved, from companies that were members of the Advisory Council, and from any and all sources other than the Foundation itself or its employees. Order of June 29, 1982.
 
 
 33
 After further discovery, both plaintiffs and defendants filed for summary judgment. On April 19, 1984, the district court granted summary judgment for defendants. The court found that plaintiffs had not presented a single fact tending to dispute the facts established by defendants.
 
 
 34
 We summarize these facts briefly. They indicated that employers did not control the litigation activities of the Foundation. The unrebutted affidavits of Reed Larson, President of the Foundation, and of Rex Reed, Legal Director of the Foundation, demonstrate the independence of the Foundation's litigation projects and their freedom from the potential for coercion or harassment by employers that we deemed central to a violation of the LMRDA. Neither the Foundation's Advisory Council nor any group of contributors determines the cases in which the Foundation will participate. Reed Affidavit at paragraphs 2, 4; Larson Affidavit at p 4. The Foundation's staff attorneys make litigation decisions, without outside influence by financial contributors or the Advisory Council. Reed Affidavit at paragraphs 2, 5; Larson Affidavit at p 5. Contributions to the Foundation are placed in a general account and are not pledged for use for a particular case or legal issue. Reed Affidavit at p 6, Larson Affidavit at p 6. The Staff Attorney assigned to the case makes strategic decisions independently from the Advisory Council and any contributors. Larson Affidavit at p 5, Reed Affidavit at p 5. As the district court correctly concluded, "Despite the many depositions that plaintiffs have taken, they have still failed to show one instance of interested employer control or participation in the litigation program decisionmaking process." 584 F.Supp. at 1224.
 
 
 35
 IV. THE CORRECTNESS OF SUMMARY JUDGMENT FOR DEFENDANTS
 
 
 36
 The unions argued, in the alternative, that they were entitled to summary judgment. Under plaintiffs' theory of the case, the actions of specific employers in influencing Foundation-sponsored litigation is not the central issue on which liability depends. Plaintiffs alleged instead that the Foundation is controlled by parties generally sympathetic to employers' interests, that the Foundation draws its primary financial support from employers, and that the Foundation's positions on legal issues coincide with those of employers. In following this strategy, plaintiffs overlooked the clear meaning of our holding that specific employer involvement must be shown to make out a violation of Section 101(a)(4) of the LMRDA. Instead, plaintiffs latched onto our statement that employer coercion of employees was not likely to be present when legal aid activity was not controlled or initiated by employers, and "cannot otherwise be imputed to such employers." 590 F.2d at 1150. Plaintiffs then argued that the Foundation's legal aid activities must be imputed to employers because "money is funnelled into the lawsuits of union members by a front for anti-labor, employer interests." 584 F.Supp. at 1224. The showing required to impute legal aid activity to employers, whether by a demonstration of employer control of lawsuits, employer initiation of lawsuits, or other employer activity, is more demanding than plaintiffs' "front" theory. The plaintiffs simply failed to demonstrate, as this court required eight years ago, that employers exert some identifiable, individualized control over the Foundation's litigation program or over specific litigation judgments made by the Foundation's attorneys.
 
 
 37
 We need not repeat our analysis of Section 101(a)(4). See 590 F.2d at 1149-51. We only emphasize that Congress' purpose in enacting the LMRDA was to protect a union member who may be engaged in a dispute with a labor organization from employers who might cause them to take actions either against their own interests or solely to serve the employers' interests. "We think Congress wanted to deny employers the power to cause harassing suits or otherwise to create divisions in the unions with which they had relationships." Id. at 1151. We then held that employers do not have the power to create divisions in the unions when they lack control or employer involvement with the litigation program. Id. Nothing in the record even remotely suggests that employers involved in the Foundation have the power to cause union members to bring harassing suits against labor organizations or otherwise to disrupt union harmony.
 
 
 38
 Given the law of this case, summary judgment for defendants was appropriate. As plaintiffs noted in their own motion, a trial would serve no purpose:
 
 
 39
 If this Court, contrary to what we believe the Court of Appeals has held, adopts the narrow legal standard proposed by defendants--direct interested employer involvement in particular Foundation lawsuits--plaintiffs can provide no substantial additional evidence at trial concerning that standard and a "trial" can only be an exercise in judicial frustration.
 
 
 40
 Plaintiffs' Motion for Summary Judgment, p. 5.
 
 
 41
 Having neither created a material issue of fact during extensive discovery proceedings nor shown their own entitlement to summary judgment, plaintiffs properly suffered adverse summary judgment. In light of our disposition of this appeal, we dismiss defendants' cross-appeal for a jury trial as moot.
 
 V. CONCLUSION
 
 42
 Throughout this protracted litigation, important first amendment freedoms have come close to colliding again and again with the desire of Congress to keep union-labor organization relations free of harassing litigation brought or controlled by disguised employers. The trial court and this court are obligated by the canons of statutory construction to make every effort to avoid such collisions. Had plaintiffs pursued a different pretrial strategy, their efforts to show a violation of the LMRDA might have jeopardized financial contributors' constitutional rights of speech and association. But the thorny issue of the permissible extent of the LMRDA's safeguards for union members' suits against unions need not be reached in this case: plaintiffs simply have not made the showing of potential employer coercion necessary to trigger the statutory safeguards.
 
 
 43
 In sum, we do not decide any grand issues of how a democracy reconciles its commitment to freedom of association and political expression with its determination to safeguard the judicial procedures for grievances between union members and their unions. We hold only that, in the particular circumstances this case presents, the district court properly granted summary judgment for defendants. The plaintiff unions, although given years in which to conduct discovery and explicit guidance on both the meaning of Section 101(a)(4) and on the factual showings necessary to preclude summary judgment, have not carried their burden of demonstrating a material issue of fact. Absent proof of individual linkages between employers and specific litigation decisions made by the Foundation, the formation and general financial support of the Foundation by employers are insufficient to trigger the prohibitions contained in the LMRDA. The decision of the district court granting summary judgment to defendants is therefore
 
 
 44
 Affirmed.