**LUCAS et al. v. AUTO CITY PARKING CO., Inc.**

**No. 710.**

Municipal Court of Appeals for the District of Columbia.

Nov. 30, 1948.

Thomas S. Jackson, of Washington, D. C. (Louis M. Denit and A. Leckie Cox, both of Washington, D. C., on the brief), for appellants.

Allan C. Swingle, of Oklahoma City, Okl. (Edwin A. Swingle and Ernest A. Swingle, both of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This was a suit for damages resulting from the theft of an automobile from defendant's parking lot. Plaintiff Mrs. Jean P. Lucas claimed to the use of her insurance carrier the sum of $60 covering damages done to her automobile while in the hands of the thief. She also claimed in her own behalf $21.50 for the loss of a fountain pen from the automobile. Her husband John C. Lucas, Jr., claimed $155.50 for the loss of a medical bag and its contents which he had also left in the automobile. The trial judge allowed the $60 item and held the other items were not recoverable. Plaintiffs appeal.

Mr. and Mrs. Lucas were medical students at George Washington University, which is just across an alley from defendant's parking lot, on H Street, Northwest. Mr. Lucas testified that just before 4:00 p. m. on October 28, 1947, he drove his wife's automobile into the alley adjoining the parking lot; that he had many times driven into this parking lot and was well known to the attendant; that in accordance with his usual custom, he drove into the alley and he and his wife got out of the car as they saw the parking lot attendant coming toward the car; that he left the keys in the car; that the attendant gave him no ticket because he was in a hurry, and, as was frequently the case, the two plaintiffs ran on into the school leaving the car for the attendant to park; that he left on the floor of the back seat a black medical leather bag containing medical instruments belonging to himself, and a fountain pen belonging to his wife; that when the door on the left side is opened, the rear seat floor is exposed so that it is readily visible to anyone getting into the car and that the black bag was readily visible; that he was accustomed to leaving articles of clothing, books, and his bag of medical instruments in the car when he drove into the lot, and that no one ever told him not to; that before this occurrence he had never seen any sign stating that the lot was not responsible nor had he seen any printed matter to that effect on the ticket; that he had many times received a ticket and usually did receive one, except when he was in an unusual hurry, as on the occasion in question; that he drove his car into this parking lot four or five times a week, and had done so for 18 months, during his attendance at the medical school; that he returned about 5:00 p. m. for his car, and it could not be found; that the attendant then gave him a parking ticket which was offered in evidence; that plaintiff noticed the time stamped on the bottom of the ticket that day, and had noticed the time stamped on the bottom of the ticket on a few previous occasions; and that the car was afterwards found in a slightly damaged condition.

The testimony of Mrs. Lucas was practically the same as that of her husband. She also testified that she had frequently left articles and medical instruments in the car; that she had never heard anyone connected with the lot object thereto or decline to accept responsibility therefor; that she had not seen a sign stating that the parking lot was not responsible for articles left in the car, nor had she seen any provision to that effect on the ticket.

Another witness who had also been a student at the same school testified that on many occasions he and others had driven into the lot and had left articles of clothing, books, and medical instruments in their automobiles; that never had any attendant at the lot said to him or to anyone else in his presence that the lot did not assume responsibility for the articles left in the car, and he had never noticed any sign or any printed provision on a ticket to that effect, and neither the sign nor any printed material on the ticket had ever been called to his attention by any employee of the defendant; and that the first time he ever saw any sign was after this case came to his knowledge and he happened to notice a small sign on the cashier's booth.

An attendant employed by defendant testified that on the day in question Mrs. Lucas brought the car into the alley [1] and left the car there seems to be of no importance.

---

[1] The discrepancy between this testimony and Mr. Lucas' testimony that he left the car there seems to be of no importance.

disappeared, and when he got to the car no one was there; that he did not see a black bag on the floor of the car and did not know it was there; that he took the car and parked it in the northwest corner of the lot facing the alley; that on the right hand side of the car there were iron posts which would prevent the car being taken out at the north end, but that it could be driven onto the alley and then north out to Eye Street without passing the cashier's booth; that he remembers moving the car at least once, at 4:00 p. m., to get another car out but that he put it back in the same place; that the car was taken without his permission and he did not know by whom; that he gave Mr. Lucas a ticket and reported the matter to the company. He testified that the cashier's window at the front or H Street side of the lot is so constructed that the cashier can see over the whole lot. He also testified as to a sign on the cashier's booth stating in part "Not responsible for articles left in car."

More specific testimony as to this sign was given by defendant's manager who said that since March or April it had been on the north or front side of the cashier's booth where customers pay their fees; that it is 2½ by 3 or 3½ feet; that the top portion is in letters 3 inches high and reads "Cars left after closing hours will be locked and the keys will be available the next weekday morning at 8:00 a. m."; that the lower portion is in letters about 2 inches high and reads "Not responsible for articles left in car"; that all the lettering is in black on a white background. The manager also testified that he designed the form of customer's parking ticket which had been in use at the lot since March or April 1947 (during the 18 months that plaintiffs had been parking their car there). The particular ticket which plaintiffs received on the day of the theft was in evidence, and contains these words in the largest type on the ticket "COMPANY NOT RESPONSIBLE FOR ARTICLES LEFT IN CAR." Also in bold type is a provision reading "No Employee Has Authority To Change Above Conditions."

In contending that they were entitled to be compensated for the loss of their personal property left in the car plaintiffs contend (1) that the trial judge should have held that defendant was a bailee of such articles, and (2) that even if not a bailee defendant's negligence in failing to prevent the theft of the automobile was the proximate cause of the loss of the articles therein.

The trial judge in a written memorandum held that there was no agreement, express or implied, as to the safekeeping of the medical bag, and we think the finding was fully warranted by the evidence. There was no proof that the medical bag was in any way entrusted to the care and custody of defendant. The evidence was simply that plaintiffs' car was driven into the alley next to defendant's lot and left there. There was no testimony that the attendant was asked to look after the bag in question or even told that it was there; and the attendant swore that he never saw it. The burden was on the plaintiffs to prove that the articles lost had been entrusted to and accepted by an employee of defendant and without proof of such acceptance there could be no bailor-bailee relationship.[2] We rule that the trial court was justified under the evidence in holding as it did that there was no agreement between the parties for the safekeeping of these articles.

Plaintiffs argue that a custom had grown up under which they and others had repeatedly left personal belongings in cars parked on the lot and that liability should be predicated on such custom. However, if such custom existed, reliance on it was entirely unilateral, for there was no evidence that defendant or its agents agreed to the custom or even knew of it. A custom, to be binding "must be certainly shown to be the general usage of the trade. * * * It must be definite, uniform, and well known, and should be established by clear and satisfactory evidence."[3] Thus the only bailment proven was that of the automobile itself, together with its usual, ordinary equipment. But a medical bag

[2] Westchester Development Corporation v. Burkett, D.C.Mun.App., 38 A.2d 628, D. A. Schulte, Inc. v. North Terminal Garage Co., 291 Mass. 251, 197 N.E. 16; Munson v. Blaise, La.App., 12 So.2d 623.

[3] United States Shipping Board Emer-

560

containing medical instruments cannot be considered the usual, ordinary equipment of an automobile, for which a garage or parking lot would normally be expected to answer in case of loss.[4]

Plaintiffs also advance the argument that there was at least a gratuitous bailment of these articles and that defendant as gratuitous bailee was guilty of gross negligence in allowing the car to be stolen, and is liable on that theory. But as we have said the evidence showed no bailment at all except of the automobile itself; hence this argument must fail.

■ The trial court based its decision in part on the limitation of liability printed on the claim check and ruled that plaintiffs knew or should have known thereof. This court has held that unless a customer knows of the terms of a limitation of liability on a ticket or claim check the limitation is not binding upon him[5] but that when the customer does have knowledge of such terms he is bound thereby.[6] In the circumstances of this case the question as to whether plaintiffs knew of the limitation was one of fact and the judge's finding thereon must stand, for there was sufficient evidence to support it.

Next we consider plaintiffs' contention that even if there was no bailment defendant is liable because its negligence in permitting the automobile to be stolen was the proximate cause of the loss of the bag. There is, of course, no question of defendant's liability for the theft of the automobile and the ensuing damage thereto.[7] And such liability was recognized and established by the judgment below. But there was no proof whatever, and no fact from which any sound inference could be drawn, as to when or by whom or under what circumstances the bag was stolen from the car. Perhaps it was stolen by the same thief who took the car, and perhaps not. Perhaps it was stolen from the car before the car was taken from the lot or after the thief abandoned the car. We can easily get lost in a tangle of speculation on the subject. But neither we nor the trial court can predicate a valid finding on such speculations.

■ It must be remembered that as to this feature of the case plaintiffs are not in as preferred a position as on the claim of bailment, with the attendant presumptions operating in their favor. On this theory of the case they are making a specific charge: that the proximate cause of the loss of the bag was defendant's negligence in failing to prevent the theft of the automobile. There was no evidence to support that charge.

It follows from what we have said that the judgment must be and is

Affirmed.

---

gency Fleet Corp. v. Levensaler, 53 App. D.C. 322, 290 F. 297, 301; Chicago, Milwaukee & St. P. R. Co. v. Lindeman, 8 Cir., 143 F. 946; McDevitt v. Waple & James, D.C.Mun.App., 34 A.2d 39.

[4] See D. A. Schulte, Inc. v. North Terminal Garage Co., supra; Rogers v. Murch, 253 Mass. 467, 149 N.E. 202; Haddad v. Griffin, 247 Mass. 369, 142 N.E. 74; Chesley v. Woods Motor Vehicle Co., 147 Ill.App. 588; Barnette v. Casey, 124 W.Va. 143, 19 S.E.2d 621.

[5] Palace Laundry Dry Cleaning Co. v. Cole, D.C.Mun.App., 41 A.2d 231. See also Dietrich v. Peters, 28 Ohio App. 427, 162 N.E. 753; Langford v. Nevin, Tex. Civ.App., 293 S.W. 673.

[6] Manhattan Co. v. Goldberg, D.C.Mun. App., 38 A.2d 172.

[7] Medes v. Hornbach, 56 App.D.C. 13, 6 F.2d 711; Quinn v. Milner, D.C.Mun. App., 34 A.2d 259.