**JULIUS GARFINCKEL & COMPANY,**
a corporation, Appellant,

v.

**FIREMEN'S INSURANCE COMPANY OF
WASHINGTON, D. C., a corpo-
ration, Appellee.**

**No. 5928.**

District of Columbia Court of Appeals.

Argued Dec. 13, 1971.

Decided March 22, 1972.

Rehearing Denied April 13, 1972.

Wade J. Gallagher, Washington, D. C., for appellant.

George H. Eggers, Silver Spring, Md., for appellee.

Before HOOD, Chief Judge, and KELLY and REILLY, Associate Judges.

REILLY, Associate Judge:

The procedure adopted by clothing stores for limiting their liability for losses incurred by customers utilizing their storage services has been challenged by a judgment for damages rendered against Julius Garfinckel & Company (referred to herein as Garfinckel's) and Washington Deliveries, Inc. This case is here on appeal by Garfinckel's.

This action arose from a failure of Garfinckel's to redeliver to a customer two of three fur pieces she had placed in storage there some six months before. The customer, a Mrs. Earl M. Ryan, who had previously insured her fur coats with Firemen's Insurance Company of Washington under a "homeowners" policy, then reported the loss to this carrier. She was paid $3,622.50, the value declared by the insured for the missing items when she had taken out the policy. Firemen's, thereupon being subrogated to her rights under the express terms of its policy, brought an action against Garfinckel's and Washington Deliveries, Inc., the trucking company hired by the store to deliver the furs.[1] The complaint alleged that such defendants—as bailees for consideration—had failed to exercise reasonable care with respect to the customer's property. In its answer, Garfinckel's alleged that the loss occurred because the codefendant trucking company was negligent in making delivery, and filed a third party complaint for indemnification against it. This cross-complaint was consolidated for trial with the principal action.

Through interrogatory, Firemen's had elicited from the codefendant information that the missing fur pieces had been delivered to an address a few doors away from the residence of the customer. This answer to the interrogatory was admitted. The driver, upon being called to the stand, remembered being assigned to deliver a parcel with the Garfinckel tickets attached. While he thought he had delivered it to the designated address, he testified that he had

1. The record shows that this company had gone out of business prior to the trial of the case.

received no receipt from the person receiving the parcel.

Failure of the driver to insist upon a receipt in this instance was a deviation from the routine. Customers, including Mrs. Ryan, placing furs in storage, are provided by Garfinckel's with a printed form, called a "Fur Storage Receipt—Not Negotiable", containing a brief description of the article, the storage charge, and the customer's evaluation. It recites that

> The . . . article will be delivered only to the customer, or to an agent of the customer, having written authority from the customer to take delivery and being properly identified as such agent. This receipt is not negotiable and must be surrendered upon delivery of the article stored.

On the supposed date of the attempted delivery, Mrs. Ryan had in her possession two such receipts. These obviously were never surrendered to any deliveryman, for at the time of the trial Firemen's, the subrogee, having obtained the documents from the customer, introduced them into evidence.[2] The driver testified that his instructions were not to require the deliveree to turn over such receipts to him unless in excess of a certain amount. The court refused to credit his explanation, expressly finding it "inherently incredible". As the trial court had observed the witness and had an opportunity to appraise his credibility, this court accepts this finding.

Garfinckel's principal defense was that at the time the furs were stored, the owner of the furs placed a valuation on them for insurance purposes of only $100 and $200, respectively,—a total of $300, although all parties concede such evaluation was far below the real worth. Garfinckel's contends that as a result of Mrs. Ryan's low evaluation of her property, its liability to her, or to any person claiming under her by subrogation or assignment, was limited to $300.

It points out that on the slip given to her when she left the pieces for storage and paid the preliminary storage fee, there was explicit printed language to that effect on the back of such document:[3]

> Julius Garfinckel & Co., Incorporated agrees to affect [sic] insurance for the benefit of the customer on each article, or articles, listed on this receipt, which shall in terms usual to such insurance, cover against loss by fire and theft for the value set opposite each item, which value shall also be the limit of this company's liability for any loss of or damage to said article, or articles . . . .

Similar words limiting the liability of the store and "the liability of the insurer for any loss or damage to said article" appear also in the formal warehouse receipts, previously described, which were mailed to Mrs. Ryan the day after the fur coats were accepted for storage.

At the trial, Mrs. Ryan, when called to the stand by Firemen's, said that she had not read the limitation clauses in the various receipts. She also testified that in filling out the blanks assigning a value for which Garfinckel's was to insure each fur piece being placed in storage, she asked the clerk in charge for advice, and was told that if the items were already covered by personal insurance, she could avoid higher storage charges by placing nominal valuations upon them. The witness also stated that it was her understanding at the time that if Garfinckel's lost any particular fur, all that she could recover from the store was the value she had placed on the item.

In the trial court, Firemen's argued that the clauses in the receipt documents failed to place the bailor, Mrs. Ryan, on notice of any limitation of liability and that in any event—because any ambiguity in an instrument should be construed against the party which had drafted it[4]—under the principal of construction known as *ejusdem generis*,

---

2. Pl. Exs. 2, 3.

3. Pl. Ex. 1.

4. *Citing* Cowal v. Hopkins, D.C.App., 229 A.2d 452 (1967).

Garfinckel's had insured her merely against fire and theft notwithstanding the catch-all phrase "any loss or damage." The trial court accepted both these propositions, held the limitation clause ineffective, and entered judgment in favor of Firemen's for the entire amount paid by it to Mrs. Ryan.

The only question before us is whether as a result of Mrs. Ryan's placing only a $300 value on her missing furs, Firemen's, whose only standing is that of a subrogee, could recover more than that amount from Garfinckel's—the trial court's findings of (a) negligence on the part of the delivery company, and (b) that such company was the agent of the store, not being drawn into issue by this appeal. Washington Deliveries, Inc. has not appealed the judgment against it.[5]

■ It is well settled in this jurisdiction that a bailee for hire can limit his liability by contract, and such limitation will be honored by the courts, unless the bailee has been guilty of gross negligence or willful misconduct. Manhattan Co. v. Goldberg, D.C.Mun.App., 38 A.2d 172 (1944); Fidelity Storage Co. v. Kingsbury, 65 App.D.C. 69, 79 F.2d 705 (1935).

■ Such a limitation can be shown by evidence of notice to the bailor at the time he places his property in the hands of the bailee, Lucas v. Auto City Parking Co., D.C.Mun.App., 62 A.2d 557 (1948). It should be noted, however, that attempts to limit liability by contract have been deemed ineffective in situations where the only notice consists of fine print on a parking lot claims check not presented to the bailor until after the bailee has taken possession, Hallman v. Federal Parking Services, D.C.Mun.App., 134 A.2d 382 (1957), or on a laundry slip placed on bundles of finished work returned to customers, Palace Laundry Dry Cleaning Co. v. Cole, D.C.Mun. App., 41 A.2d 231 (1945).

■ In our opinion, there is no testimony in this case which could support a finding that Mrs. Ryan was not effectively put on notice that the valuation she herself placed on her furs at storage established a ceiling on a potential liability of Garfinckel's. Her own account of her colloquy with appellant's clerk reveals that she understood that because the furs were already fully insured by reason of her Firemen's policy, it was not to her economic advantage to pay a higher premium for equivalent Garfinckel coverage.

Firemen's counsel at oral argument suggested that Mrs. Ryan was the victim of misleading advice by the Garfinckel employee, contending that the customer's net reimbursement for her loss would have been greater had she not been dissuaded from assigning a higher valuation on the articles. It is difficult to understand how this contention could be seriously advanced. The claim form submitted to Firemen's by the insured is in the record.[6] Its terms expressly obligated the claimant to turn over to Firemen's any money the insured collected for the same loss from any other source. Thus, if the customer had put down on the Garfinckel slip what she deemed the full value of her furs and had been subsequently reimbursed, Firemen's, not Mrs. Ryan, would have been the beneficiary.

■ Nor can the judgment of the trial court be sustained by the text of the limitation of liability clauses. In our view, the court erred in placing so narrow a construction upon the previously quoted language in the storage receipt. A fair reading of the entire document indicates that Garfinckel's was not merely concerned with protecting itself against claims arising out of fire and theft, but also against loss or damage of any sort because (a) one of the blanks which had to be filled out described any defects in the article at the time of bailment, and (b) the paragraph making surrender of the warehouse receipt

5. *See* n. 1.

6. Pl. Ex. 6.

## 666

a condition precedent to the bailee's return of the article was obviously intended to guard against a misdelivery—which the court below found to be the reason for the disappearance of the Ryan furs. While we recognize the rule of *ejusdem generis*, we have also pointed out that this principle of construction ". . . is a mere suggestion to the judicial mind that when the author uses particular words, his words of more general description may not have been intended to embrace any others than those within the class. The doctrine is not a rule of substantive law: it is merely a rule of construction to be used as an aid to interpretation *when intention is not otherwise apparent*." (Footnotes omitted; emphasis in text.) Hodges v. United States Fidelity & Guaranty Co., D.C.Mun.App., 91 A.2d 473, 476 (1952).

In this instance, we hold that an intention to cover such losses as Mrs. Ryan suffered is shown by the text of the pertinent instruments. Moreover, even under a strict application of *ejusdem generis*, a loss due to misdelivery would fall into the general category of a loss caused by theft, for the person who actually received delivery of the garments, if honest, would have notified the rightful owner rather than misappropriating them for purposes of her own.

 In urging this court to affirm the judgment, Firemen's advances two considerations rejected by the trial court. The first is that an attempted limitation of liability is an affirmative defense which should have been, but was not, cited in appellant's answer. But the record shows that Firemen's—not appellant—was the party which put into evidence the documents containing the limitation. Thus, appellant was entitled to point out their significance in arguing for a diminution of recovery. The other is that the defense of limited liability was not available because appellant and its agent, the delivery company, were chargeable with gross negligence. This argument is predicated on the driver's testimony concerning instructions releasing drivers from the duty of obtaining receipts on delivery. As we have already observed, there was no error on the part of the trial court in rejecting this testimony.

 Finally, Firemen's contends that even assuming a valid limitation of liability in Garfinckel's contract with Mrs. Ryan, Garfinckel's repudiated the contract by refusing to reimburse her for the $300 assigned value and returning her payment of $10. At the time she presented the draft release to Garfinckel's, however, the latter's insurance carrier was aware of Mrs. Ryan's subrogation agreement with Firemen's which divested her of any independent right to execute a release to which the reimbursing carrier was not a party.

Reversed and remanded for entry of judgment for the appellee in an amount not to exceed $300, exclusive of interest and costs.