William H. HAYGAN, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 85–2609.

United States District Court,
District of Columbia.

Feb. 7, 1986.

Mitchell B. Weitzman, Robert A. Ades & Associates, P.C., Washington, D.C., for plaintiff.

James N. Owens, Asst. U.S. Atty., Joseph E. DiGenova, U.S. Atty., Royce C. Lamberth, Asst. U.S. Atty., Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

This is a claim of negligence under the Federal Tort Claims Act, 28 U.S.C. § 2671–80 and breach of contract under the Tucker Act, 28 U.S.C. § 1346(a)(2) as the result of the theft of plaintiff's car from a government parking lot sometime during the night of March 12–13, 1983. Plaintiff has already received $2,857.16 from his insurance company. He seeks to recover an additional $3,000 in this action.

Before the Court is the entire record in this case including the defendant's motion to dismiss or in the alternative for summary judgment, plaintiff's opposition thereto, and defendant's reply. For the reasons set forth below the defendant's motion for summary judgment is granted.

## BACKGROUND

The material facts are undisputed. Plaintiff's Opposition, p. 1, n. 1.

At the time of the theft plaintiff was employed by the Government Printing Office (GPO) in Washington, D.C. and had a valid parking permit issued by GPO.

Plaintiff's regular work shift began at 4:30 PM and ended at 1 AM. Shortly before reporting to work on Saturday, March

12, 1983 the plaintiff parked his car in Lot 17. Returning to the lot at the end of his shift the plaintiff discovered his car missing. He immediately reported the car stolen to the GPO Vehicle Parking Lot Patrol Officer. Eventually, the car was recovered. Its ignition lock had been ripped from the steering column, the entire right side was damaged, and the glove box and trunk had been ransacked.

As mentioned, plaintiff's insurance company paid him $2,857.16 to compensate for the damages. He then filed a Federal Tort Claims Act administrative claim for $980 in an effort to recover for those losses not paid for by his insurance carrier.[1] Plaintiff's claim was denied by the GPO on February 15, 1985. He filed this suit on August 14, 1985.

Plaintiff alleges two causes of action. The first, brought under the Federal Tort Claims Act, 28 U.S.C. § 2671–80, alleges the government was negligent in not providing *any* security for the lot where the plaintiff parked his car. Complaint, ¶ 7 (emphasis added). Plaintiff also alleges breach of a bailment contract. Complaint, ¶ 6.

The defendant argues (1) that the negligence claim is barred by the Federal Tort Claims Act (FTCA), (2) no bailment contract ever existed, and (3) the parking space application explicitly disclaimed liability for damage occurring while the car is on the GPO lot.

## SECURITY IS A DISCRETIONARY FUNCTION AND THE FEDERAL TORT CLAIMS ACT BARS CAUSES OF ACTION BASED ON FAILURE TO PERFORM DISCRETIONARY FUNCTIONS

■ The FTCA does not waive the federal government's immunity for claims based on the alleged failure to perform a discretionary function. 28 U.S.C. § 2680(a).

■ The "discretionary function" exemption "includes determinations made by executives or administrators in establishing plans, specifications, or schedules of operations. Where there is room for policy judgment and decision there is discretion." *Dalehite v. United States*, 346 U.S. 15, 35–36, 73 S.Ct. 956, 967–68, 97 L.Ed. 1427 (1953); *Taxay v. United States*, 345 F.Supp. 1284, 1285 (D.D.C.1972) (The "discretionary function" exemption "shields the government from suit for 'planning' or policy decisions, as opposed to those made on an 'operational' level".)

Applying this test courts have found providing building security a discretionary function. In *Turner v. United States*, 473 F.Supp. 317 (D.D.C.1979), plaintiff, a maintenance force supervisor, was raped while working in the South Building of the Department of Agriculture. She filed suit under the FTCA claiming the government was negligent in not providing adequate security for people working in the building. The Court ruled that "given the prevalence of crime in the District of Columbia it is, of course, always 'forseeable' that harm could come to the occupant of a government building". Even so, "the government's decision to maintain only two guards and to lower the lights due to the energy crisis were clearly discretionary acts". *Id.* at 320. As a result, her suit was barred by the FTCA.

In *Relyea v. State*, 385 So.2d 1378 (Fla. 4th DCA, 1980), students were kidnapped from a state university's parking lot and murdered. Plaintiffs alleged the state was negligent in not providing security for the

---

**1.** Plaintiff seeks to recover $3,000 in damages. The FTCA bars actions "for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based on newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency". 28 U.S.C. § 2675(b). Accordingly, the government seeks to limit any recovery to $980, the amount claimed in the administrative proceeding. Plaintiff says the increased claim is a result of unspecified "ongoing vehicle trouble past the date of the administrative claim". Plaintiff's Opposition, p. 4, n. 2. As defendant's motion for summary judgment is granted the issue of plaintiff's claiming over $980 need not be resolved.

lot. The Court held that "whether to provide security guards, parking attendants, security gates, and the numbers thereof, are clearly discretionary decisions partially based upon budgetary limitations controlled by the Legislature". *Id* at 1382.

In the case now before this Court the plaintiff's claim that the government was negligent in not providing security is identical to the claims made by the plaintiffs in *Turner* and *Relyea*. And, as the courts did in *Turner* and *Relyea* here too the plaintiff's claim is barred by the discretionary function exemption.[2]

In this case there are only a limited number of guards available for weekend duty at the GPO facility. Therefore, in the interests of efficiency, only one police officer was assigned, as a "roving patrol", to monitor all the parking lots. Declaration of Robert Blaney, Deputy Director of Security Service, U.S. Government Printing Office.

Under the "discretionary function" exemption as ennunciated in *Dalehite, Taxay,* and *Turner* the GPO's decision to assign only one officer to patrol the parking lots on weekends was beyond question an executive decision, thus discretionary, and, as such, cannot be the grounds for a suit under the FTCA.

## PLAINTIFF'S APPLICATION FOR A PARKING SPACE CREATED A LICENSE NOT A CONTRACT

■ The parties disagree whether plaintiff's application for a parking space created a bailment contract (Plaintiff's Opposition, p. 3) or merely a license (Defendant's Reply, p. 2).

Again, the material facts are not in dispute. All that remains is the question of law that this Court can and will decide. See *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Inc. v. National Right To Work Legal Defense and Education Fund, Inc.,* 781 F.2d 928 (D.C. Cir.1986). ("Summary judgment is proper if no genuine issue as to a material fact remains." *Id.* at 932)

The procedure in the GPO parking lots is that the driver park his car, lock it (if he wishes), and retain possession of his car keys. Such "park and lock" arrangements create either lease or license relationships. Plaintiff's contention that his application for a parking space created a bailment contract is incorrect. *Sarbov Parking Corporation v. Motors Insurance Corporation,* 255 A.2d 112, 113 (D.C.App.1969) ("[I]n most cases [park and lock arrangements] [are] held not to create a bailment. Rather, these factors are thought to create either a lease or license relationship". *Id.* at 113.)

## PLAINTIFF IS BOUND BY THE DAMAGE LIABILITY RELEASE IN THE PARKING APPLICATION

■ The application for a parking space submitted by the plaintiff contains a provision releasing the government from all liability from damage while the car was on the lot. The provision is set out in full in the margin.[3]

This release was not buried in paragraphs of boilerplate, printed in type virtually unreadable by the naked eye, or phrased in language comprehensible only to law school deans. Anyone who read it would understand it. It appears immediately above the line for the applicant's signature. It is only reasonable to assume the applicant read, understood, and accepted this clause. Absent gross negligence, fraud, or willful acts (none of which occurred or are alleged to have occurred) such limitations of liability are routinely

---

**2.** In his complaint, plaintiff alleges the government provided no security for the lot. As the government correctly points out, some security was provided, just not as much as the defendant thinks adequate. Defendant's Motion to Dismiss, p. 3. n. 4.

**3.** "NON–LIABILITY OF GPO: I understand that the GPO will not be liable for any damage caused any motor vehicle while on a GPO lot and I hereby agree to release GPO from any liability on any claims I might have arising from any damage done to any vehicle while it is located on a GPO lot."

enforced, when, as here, the bailor knew of them. *Lucas v. Auto City Parking,* 62 A.2d 557 (D.C.App.1948) (Plaintiff whose medical bag was stolen from car parked on defendant's lot held bound by sign reading "COMPANY NOT RESPONSIBLE FOR ARTICLES LEFT IN CAR".); *Houston v. Security Storage Company of Washington,* 474 A.2d 143, 144 (D.C.App.1984).

Consequently, the government's disclaimer of liability is valid and the plaintiff's contract claim, foreclosed.

## CONCLUSION

For the reasons set forth herein, defendant's motion for summary judgment as to the plaintiff's claims sounding in tort and in contract will be granted.

An order in accordance with the foregoing will be issued of even date herewith.