**Elias ATTALLAH, Violeta Lajam De Attallah and the conjugal partnership they comprise, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 88–1691 GG.**

United States District Court, D. Puerto Rico.

Feb. 4, 1991.

82

Luis A. González Pérez, Garcia & Gonzalez, Hato Rey, P.R., for plaintiffs.

Osvaldo Carlo Linares, Heidi E. Weckwert, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

GIERBOLINI, District Judge.

This matter comes before the Court on defendant's motion to dismiss the complaint. Plaintiffs sued the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, seeking to recover damages for the theft of their property. The defendant asserted various jurisdictional grounds for dismissal, including the statute of limitations, scope of employment, and the discretionary function exception to the FTCA. The matter was submitted to the United States Magistrate for report and recommendation, who on April 2, 1990, recommended that the case be dismissed. The Court, having reviewed the pleadings, the Magistrate's findings and recommendations, and the entire record in this case,

now holds that this action should be dismissed.

## FACTS

Elias Attallah and Violeta Lajam Attallah (hereinafter "plaintiffs") allege that on or about September 10, 1982, a courier named Yamil A. Mitri Lajam transported currency and other monetary assets into the Commonwealth of Puerto Rico on their behalf. These assets were owned by plaintiffs and valued at $693,838.43. Upon arrival at Luis Muñoz Marín International Airport, Lajam declared and surrendered the assets for verification to the U.S. Customs Service agents ("Customs agents" or "agents") on duty, as required by federal law. The courier was to enter the country and deposit the assets at the Royal Bank of Canada. When plaintiffs did not hear from Lajam that day, they contacted the bank and were told that the courier had not arrived. Plaintiffs then contacted the Customs Service and were told that Lajam had been processed through customs and had left the premises. Elias Attallah traveled to Puerto Rico the evening of September 10, 1982, and went to the Customs Service office the next day. After being told the same information, he contacted the Puerto Rico Police Department.

Plaintiffs allege that Customs agents Rafael J. Domínguez, Daniel J. Maravilla, Julio C. Palmer, and other unidentified agents designated as John, Richard and William Doe, negligently failed to provide adequate security for the assets, which were stolen or lost while under the exclusive custody and control of the Customs agents. Plaintiffs allege that Customs agents Maravilla and Domínguez willfully assaulted, robbed and murdered Lajam. Plaintiffs further allege that the Customs Service negligently supervised the aforementioned agents, and fraudulently concealed the two agents' involvement in the disappearance of the assets.

Ten days later, Lajam's decomposed body was found at the bottom of a gully

near El Yunque rain forest.[1] On May 13, 1987, a federal grand jury returned an indictment against former agents Domínquez and Maravilla. The indictment was the conclusion of a federal investigation into the death of Lajam. In June 1987, Elias Attallah was approached by the U.S. Justice Department to testify for the prosecution in the criminal trial against former agents Domínguez and Maravilla.

On January 12, 1988, the Customs Service received a letter from plaintiffs claiming damages arising from the conduct of Domínguez and Maravilla.[2] The instant complaint against the United States was filed on October 3, 1988.

### I. Statute Of Limitations

#### A. Accrual

It is well settled that an action brought against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., must be dismissed if a plaintiff has failed to file a timely administrative claim with the appropriate Federal agency. United States v. Kubrick, 444 U.S. 111, 113, 100 S.Ct. 352, 354, 62 L.Ed.2d 259 (1979). See González–Bernal v. United States, 907 F.2d 246 (1st Cir.1990); Vega–Vélez v. United States, 800 F.2d 288 (1st Cir.1986); Richman v. United States, 709 F.2d 122 (1st Cir.1983). The FTCA affords a plaintiff two years from the date a claim against the United States accrues in which to file a written claim with the agency, thereby preserving his right to bring a tort suit against the United States. 28 U.S.C. § 2401(b).[3] The filing of a timely administrative claim is a jurisdictional requirement which cannot be waived. González–Bernal v. United States, 907 F.2d at 248; Richman v. United States, 709 F.2d at 124; Fleischmann v. United States Government, 637 F.Supp. 1200, 1202 (D.P.R.1986); Fagot v. Federal Deposit Insurance Corp., 584 F.Supp. 1168, 1177 (D.P.R.1984). If the claimant fails to comply with this requirement, his claim is "forever barred." 28 U.S.C. § 2401(b).

The determination as to when a claim accrues within the meaning of the FTCA is a matter of federal law. United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); González–Bernal v. United States, 907 F.2d 246, 249 (1st Cir.1990); Nicolazzo v. United States, 786 F.2d 454, 455 (1st Cir.1986); Steele v. United States, 599 F.2d 823, 826 (7th Cir.1979); Vega–Vélez v. United States, 627 F.Supp. 773, 777 (D.P.R.), aff'd on other grounds, 800 F.2d 288 (1st Cir.1986). The general rule is that a tort claim accrues at the time of the plaintiff's injury. United States v. Kubrick, 444 U.S. at 120, 100 S.Ct. at 358; Vega–Vélez v. United States, 800 F.2d at 289, 290; Richman v. United States, 709 F.2d at 123.

---

1. Apparently, Lajam was last seen alive while being escorted by Domínguez. Both he and Maravilla disappeared for several hours following Lajam's arrival at the airport. He had been shot in the back of the neck. The money was never found. Following a federal investigation, Domínguez and Maravilla were indicted for the crimes. After a jury trial, the former agents were convicted of murdering Lajam, among other crimes. González–Bernal v. United States, 907 F.2d 246 (1st Cir.1990) (wrongful death suit brought by the wife and children of courier Lajam against the United States and the Customs Service). In González–Bernal, the district court dismissed the action as untimely. The First Circuit affirmed that decision on appeal.

2. Plaintiffs filed an initial complaint against the United States and the Customs Service on June 29, 1988. Defendants filed a motion to dismiss based on various grounds, including plaintiffs' failure to exhaust their administrative remedies prior to filing suit. Plaintiffs' complaint was dismissed without prejudice on the sole ground that they failed to exhaust their administrative remedies inasmuch as their suit was filed prematurely. Section 2675(a) of the FTCA provides that an agency has six months in which to make disposition of an administrative claim. If, after that six-month period, the agency has not acted upon the claim, the claimant may file a lawsuit in district court. In the initial case here, plaintiffs did not wait the prescribed period before filing their district court action.

3. Title 28 U.S.C. § 2401(b) provides:
   "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

▪ In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court held that a cause of action accrues under the FTCA when a plaintiff discovers, or in the exercise of reasonable diligence could have discovered, both the existence and cause of his injury. *Id.* at 121–125, 100 S.Ct. at 359–61. The Court rejected the argument that accrual should await knowledge by the plaintiff that his injury was negligently inflicted. *Id.* at 124, 100 S.Ct. at 360.

▪ The government argues that plaintiffs were aware of their injury and its cause on or about September 10, 1982. We disagree. In cases such as this, where the injury and its cause are not immediately apparent, accrual of the cause of action occurs at the time the injury is discovered or when a claimant in exercise of reasonable diligence could have discovered it. *Kubrick*, 444 U.S. at 121–125, 100 S.Ct. at 359–61. As the Magistrate found, "there was no way the plaintiffs could have known before June 1987 that two Customs Agents kidnapped, robbed and murdered their courier." (Magistrate's Report and Recommendation at 2). Plaintiffs' cause of action therefore accrued on or about June 1987, and since plaintiffs presented their claim to the Customs Service in January 12, 1988, their action is timely.[4]

## II. *Scope Of Employment*

However, plaintiffs' cause of action is barred on a different jurisdictional ground. The United States is only liable for "loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b). Plaintiffs contend that the Customs agents on duty at the time of the incidents giving rise to this lawsuit were acting within the scope of their employment. Whether or not a government employee's act is within the scope of his office or employment "is a matter to be determined in accordance with the law of the place in which the alleged negligent act or omission occurred." *Borrego v. United States*, 790 F.2d 5, 6 (1st Cir.1986).

▪ Under Puerto Rican law, the employee's acts must "further[ ] a desire to serve and benefit the employer's interest, resulting in economic benefit to the employer." *Borrego v. United States*, 790 F.2d at 7. The following three elements must be evaluated: " 'a) Desire to serve, benefit, or further his employer's business or interest. b) That the act is reasonably related to the scope of the employment. c) That the agent has not been prompted by purely personal motives.' " *Id.*, quoting *Rodríguez v. United States*, 328 F.Supp. 1389, 1391 (D.P.R.1971).

▪ The criminal conduct at issue in the instant case was clearly prompted by purely personal motives and was not related to the accomplishment of objectives within the line of any Customs Service duties. The former agents' outrageous and excessively violent conduct was in no sense rationally connected to the subject matter which formed the basis of the *respondeat superior* relationship existing between them and the Customs Service. These individuals had no desire to serve the government's interest and had indisputably stepped outside the scope of their employment in committing intentional criminal acts against the plaintiffs and their courier in this case. Accordingly, these acts cannot be imputed to the United States. *Diminnie v. United States*, 728 F.2d 301, 305 (6th Cir.1984), *cert. denied*, 469 U.S. 842, 105 S.Ct. 146, 83 L.Ed.2d 85 (1984).

Indeed, any Customs Service agents who either directly or tangentially participated in such wrongful conduct, whether that conduct occurred during the abduction and murder, or in covering up the crimes, as a matter of law would not be acting within

---

4. Plaintiffs contend that the federal government fraudulently concealed the critical facts relating to the former Customs agents' involvement in the disappearance of the assets. *But see González–Bernal v. United States*, 907 F.2d 246, 250 (1st Cir.1990) ("[T]he government is under no obligation to provide private citizens with information concerning ongoing criminal investigations"). Because the court has found that plaintiffs action is timely we do not address this issue.

the scope of their employment.[5] Any Customs Service employee aware of the treatment received by the plaintiffs' courier, who did not so alert the authorities or Customs Service officials, would not be furthering the interests of the Customs Service and would indeed be prompted by purely personal motives. *See Borrego v. United States*, 790 F.2d 5 (1st Cir.1986). Such employees would, in effect, be ignoring their responsibility to their employer in much the same way the criminals convicted of stealing plaintiffs' assets ignored their duties. Those acts cannot, therefore, provide the basis of liability against the United States. To accept plaintiffs' contention would be to require employers in Puerto Rico to supervise the acts of employees that occur outside the scope of their employment. Such a requirement is entirely inconsistent with Puerto Rican law and cannot be supported. Plaintiffs' bare assertion of the existence of a "duty" to supervise employees during the commission of acts which in no way further or promote the employer's business cannot create a duty where none exists.

Puerto Rican case law illustrates the inevitability of this holding. In *Jiménez v. People*, 83 P.R.R. 195 (1961), a state policeman, who was on duty and in uniform, had an argument with a citizen and thereafter followed him home and fatally shot him. The decedent was not committing any crime or otherwise acting in a manner which should have provoked such a response from the officer in his official capacity. Initially, the court noted that "an employer is not liable for the wrongful criminal and intentional acts of an employee, unless this conduct is due somehow to the employee's desire to serve, benefit or further his employer's business or interest." *Id.* at 201. Stated another way, the court determined that the "test of liability

is whether notwithstanding the fact that it is a question of wrongful conduct, the act performed is reasonably related to the scope of the employment, or if the agent has been prompted by purely personal motives." *Id.* The court noted that the fact that the policeman was in uniform and on duty did not in itself render the Commonwealth liable. Rather, there must be some link between the criminal act committed by the policeman and the defense or protection of the interests of the community. In reversing the lower court's judgment for the plaintiff, the court held that:

> [i]n the present case the evidence does not show any connection whatsoever between the death of plaintiffs' predecessor and the discharge by policeman Belen of his duties of office.... [T]he evidence tends to point out rather that the deceased was not committing any crime whatsoever when the argument with the policeman took place, and that the incident ended apparently when the former went home. Even when it may be gathered that the agent acted moved by the anger or rage which the argument aroused in him, the essential element would always be lacking, that his act was due somehow to the purpose of protecting and benefiting the interests of the Commonwealth, for this is not ... a question of an incident occurred in the pursuit or attempt to arrest a person who was committing a crime.

*Id.* at 202.

The same result was obtained in *Torres v. J. Lema & Co.*, 36 P.R.R. 72 (1926). There, a policeman entered a shop which was open after hours and ordered the clerks to close the shop. An argument ensued and one of the clerks struck the policeman on the head with a piece of iron. In reversing the lower court's judgment against the employer, the court held that:

---

**5.** In their objection to the Magistrate's Report and Recommendation, plaintiffs assert that their cause of action does not arise out of the kidnapping and murder, but rather "has its roots in the negligence of the supervisors and other Customs Agents that were on the premises at the time the courier was being processed, who failed to take the necessary security measures to protect the assets that had been surren-

dered to their custody." Plaintiffs contend that if all of the agents on duty had performed with due diligence, the monetary assets would not have been stolen. However, plaintiffs claims do indeed arise out of the abduction and murder of Lajam. There would be no claim based on the alleged negligence of the United States but for the heinous criminal acts of these former agents.

since the duties of the employees of J. Lema & Co. in their shop in Río Piedras [were] to sell the goods in stock there, the act of Martínez in assaulting and wounding the policeman while he was talking with the other clerks about the closing of the shop was neither in the line of the business for which he was engaged nor on account thereof. He was not following directions from his principal in that respect, nor was such act within the scope of his employment, nor was he authorized by his employer tacitly or implicitly to commit it, nor was it connected with his duties, so that J. Lema & Co. could not foresee that their clerk might commit an act of that kind in selling the merchandise.

*Id.* at 75. *Accord Martínez v. Trujillo & Mercado,* 24 P.R.R. 271 (1916); *Marrero v. López et al.,* 15 P.R.R. 746 (1909).

Plaintiffs' reliance upon two Puerto Rican cases dealing with police liability is misplaced because neither case examines the scope of employment issue. Liability arose in those cases because the negligent police officers, who were clearly acting within the scope of their employment, had actual knowledge of a substantial likelihood of harm, but nonetheless failed to prevent fellow officers from committing crimes. *Hernández Centeno et al. v. Commonwealth of Puerto Rico,* 116 D.P.R. 293 (1985); *Negrón v. Orozco Rivera,* 113 D.P.R. 712 (1983). In the instant case, plaintiffs merely allege that supervisors should have more closely monitored the former agents, and that "adequate" supervision would have alerted the Customs Service to the "threat" of the former agents' criminal tendencies.[6] These allegations are insufficient to support liability under *Negrón* or *Hernández.*[7]

Case law from other jurisdictions also supports dismissal of the instant lawsuit. For example, in *Bates v. United States,* 701 F.2d 737 (8th Cir.1983), the Eighth Cir-

cuit held that a military policeman's assault and murder of four youths while he was on active duty on the military base were not performed within the scope of his employer's business, but rather to gratify his own desires and to fulfill his own motives. *Id.* at 741, 742. This was so even though the policeman had used his official status to stop the youths' vehicle and detain them on the pretext of investigating an alleged theft. The court determined that the policeman's acts "could not, under any circumstances, be construed to have been in furtherance of his employer's business or incident to any business of his employer." *Id.* at 742. The court held that the policeman's acts were so outrageous, criminal and excessively violent as to be outside the scope of his employment as a matter of law. *Id.* at 741, 742.

The same result was obtained in *Gambling v. Cornish,* 426 F.Supp. 1153 (N.D.Ill. 1977), where two off-duty police officers abducted and assaulted the plaintiff after she refused a request by one of the officers for a date. The district court dismissed the suit against the city, reasoning that under Illinois law, an employer is only liable for the negligent, malicious, or criminal acts of its employees when such acts are committed "in furtherance of the business of the employer; but when the act is committed solely for the benefit of the employee, the employer is not liable to the injured third party." *Id.* at 1154, 1155, quoting *Bremen State Bank v. Hartford Accident and Indemnity Co.,* 427 F.2d 425, 428 (7th Cir. 1970). The court specifically held that the abuse of police authority could not be grounds for *respondeat superior* liability. *Accord Vargas v. Correa,* 416 F.Supp. 266 (S.D.N.Y.1976); *Henderson v. Laclede Radio, Inc.,* 506 S.W.2d 434 (Mo.1974); *Wellman v. Pacer Oil Company,* 504 S.W.2d 55 (Mo.1974), *cert. denied,* 416 U.S. 961, 94 S.Ct. 1981, 40 L.Ed.2d 313 (1974); *Potter Title & Trust Company v. Knox,* 381 Pa.

---

**6.** Allegations regarding negligent supervision are not actionable in this case because supervision of government employees is discretionary activity and thus excepted from the United States' waiver of sovereign immunity by the discretionary function exception. *See infra.*

**7.** Nor do we decide today whether the factual circumstances in *Negrón* or *Hernández* would support FTCA liability.

202, 113 A.2d 549 (1955); *Howard v. Zaney Bar,* 369 Pa. 155, 85 A.2d 401 (1952); *Gotthelf v. Property Management Systems,* 189 N.J.Super. 237, 459 A.2d 1198 (App. 1983); *Fitzgerald v. McCutcheon,* 270 Pa. Super. 102, 410 A.2d 1270 (App.1979); *Roth v. First National State Bank of N.J.,* 169 N.J.Super. 280, 404 A.2d 1182 (App.1979); *Nelson v. Nuccio,* 131 Ill.App.2d 261, 268 N.E.2d 543 (1971); and *Adami v. Dobie,* 440 S.W.2d 330 (Tex.App.1969).

These cases establish that intentional and criminal acts committed for purely personal motives fall outside the scope of employment and are thus not chargeable to the employer, even when official authority is abused to further those acts. The Customs agents in this case were not furthering their employer's interest when they abducted and murdered the courier and stole plaintiffs' assets. Their acts were not "reasonably related" to the scope of their employment and were not undertaken to further the interests of the Customs Service, as would be required for plaintiffs to prevail under the laws of Puerto Rico. *Borrego v. United States,* 790 F.2d at 7. Plaintiffs' claim against the United States is, for that reason, dismissed for failure to state a claim upon which relief can be granted.

## III. *Negligent Supervision/Inadequate Security*

To the extent plaintiffs' claim arises from allegations regarding negligent supervision of employees by the Customs Service and inadequate security measures at the Luis Muñoz Marín International Airport, the claim is barred by the discretionary function exception to the Federal Tort Claims Act. 28 U.S.C. § 2680(a).

The discretionary function exception, which Congress regarded as a "highly important exception," precludes the imposition of liability against the United States for conduct "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ..., whether or not the discretion involved be abused." The Supreme Court's decisions construing the discretionary function exception—*Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)—have laid down four principles which govern the application of § 2680(a).[8]

First and foremost, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764; *Berkovitz,* 108 S.Ct. at 1958. Thus, § 2680(a) protects the conduct of federal employees at all levels of government. "[T]he basic inquiry is whether the challenged acts of a Government employee— whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764. "Not only agencies of government are covered but all employees exercising discretion." *Dalehite,* 346 U.S. at 33, 73 S.Ct. at 966.

Second, in determining whether challenged acts are of the appropriate "nature

---

8. In *Dalehite,* hundreds of persons were killed and a city was leveled when a fertilizer manufactured and shipped by federal contractors under "the general supervision, direction, control, and approval" of the Army disastrously exploded while it was being loaded for export. *Dalehite,* 346 U.S. at 23, 73 S.Ct. at 961. The plaintiffs claimed that the United States negligently initiated the fertilizer export program, negligently designed and approved inadequate specifications for the fertilizer, negligently failed to warn area residents of the dangers of the fertilizer, and negligently supervised the fertilizer's storage and shipment. 346 U.S. at 45–47, 73 S.Ct. at 972–74. In *Varig,* which involved two airplane crashes in which more than one hundred people were killed, the plaintiffs contended that the Federal Aviation Administration negligently certified that the airplanes were airworthy after its certification process failed to detect design defects in the airplane. The plaintiff in *Berkovitz* alleged that the Food and Drug Administration's licensing and release of a polio vaccine violated mandatory and specific scientific regulations and internal policies. The Supreme Court held that the functions involved in the first two cases were discretionary, but that the allegations in *Berkovitz* were sufficient to withstand a motion to dismiss.

and quality," a court must "consider whether the action is a matter of choice for the acting employee. . . . [C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz*, 108 S.Ct. at 1958. *See Dalehite*, 346 U.S. at 42, 73 S.Ct. at 971 ("To the extent, then, that the Army had a choice in the matter, its decision . . . was within the exception.").

Third, "assuming that the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 108 S.Ct. at 1959. In enacting § 2680(a), "Congress wished to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *Varig*, 467 U.S. at 814, 104 S.Ct. at 2764; *Berkovitz*, 108 S.Ct. at 1959. Thus, "[w]here there is room for policy judgment and decision there is discretion" of the sort protected by § 2680(a). *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968; *Berkovitz*, 108 S.Ct. at 1959. "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz*, 108 S.Ct. at 1959.

Finally, if the challenged conduct is of the nature and quality that Congress intended to protect, § 2680(a) applies even if negligence is alleged. "Congress exercised care to protect the Government from claims, however negligently caused, that affected the governmental functions." *Dalehite*, 346 U.S. at 34, 73 S.Ct. at 967. Like the requirement that the conduct must involve an element of choice or judgment in order to be protected by § 2680(a), this principle is compelled by the language of the discretionary function exception, which applies regardless of "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "It is clear that the just-quoted clause as to abuse connotes both negligence and wrongful acts in the exercise of discretion. . . . The exercise of discretion could not be abused without negligence or a wrongful act." *Dalehite*, 346 U.S. at 33, 73 S.Ct. at 967.

## A. *Negligent Supervision*

■ Plaintiffs allege that the Customs Service "failed to monitor the conduct of Maravilla and Domínguez prior to September 10, 1982, which would have foreseeably demonstrated that the aforementioned agents constituted a threat" to the public during passage through customs. Plaintiffs essentially contend that the Customs Service made negligent personnel decisions in not predicting future criminal conduct and in not terminating the former agents.

The nature and extent of supervision to be given government employees involves the permissible exercise of policy judgment and is thus activity protected by the discretionary function exception. 28 U.S.C. § 2680(a). Since this claim falls within the exception, it is not actionable under the FTCA because the court lacks subject matter jurisdiction over the claim. *Hydrogen Technology Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir.1987). In essence, plaintiffs would have this Court reevaluate, through an action in tort, the policy decisions made by the Customs Service with respect to its personnel management. However, it is precisely these types of decisions which the Supreme Court in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), said should not be second-guessed through the medium of a tort suit.

> The exception was drafted . . . to assure protection for the Government against tort liability for errors in administration or in the exercise of discretionary functions. . . . It was not "intended that the . . . propriety of a discretionary administrative act should be tested through the medium of a damage suit for tort."

*Id.* at 27, 73 S.Ct. at 963 (citations omitted).

The First Circuit recently held that a claim alleging a breach of a duty to "supervise" federal employees is barred by the discretionary function exception. In *K.W. Thompson Tool Co., Inc. v. United States*, 836 F.2d 721 (1st Cir.1988), the court affirmed dismissal of a complaint alleging, *inter alia*, that four employees and the administrator of the Environmental Protec-

tion Agency ("EPA") had failed to properly supervise subordinates in the investigation of alleged violations of the Clean Water Act. Because the EPA "has the discretion to decide how it will carry out its mandate," the court held that "discretion [was] vested in the agency's administration and enforcement of the Clean Water Act." *Id.* at 728. As such, the allegations regarding supervision of its employees by the EPA fell within the discretionary function exception and any alleged negligence based on that conduct was not actionable. The nature and extent of supervision to be given government employees involves the permissible exercise of policy judgment and is thus protected by the discretionary function exception. *Accord Del Valle v. United States*, 856 F.2d 406 (1st Cir.1988); *Carlyle v. United States*, 674 F.2d 554 (6th Cir.1982); *Pooler v. United States*, 787 F.2d 868 (3rd Cir.1986); *Dretar v. Smith*, 752 F.2d 1015 (5th Cir.1985); *Flammia v. United States*, 739 F.2d 202 (5th Cir.1984); *Ortiz v. United States*, 661 F.2d 826 (10th Cir.1981); *Slagle v. United States*, 612 F.2d 1157 (9th Cir.1980); *Goodwill Industries of El Paso v. United States*, 218 F.2d 270 (5th Cir.1954); *Salvador v. Meese*, 641 F.Supp. 1409 (D. 986).[9]

The instant case falls squarely within the discretionary activity which Congress meant to protect in enacting § 2680(a). The decision as to whether the Customs Service should undertake the type of supervision or surveillance contemplated by the plaintiffs certainly calls for the exercise of policy judgment and decision. In the same way, the manner and extent of such supervision would require an administrative decision based on a wide range of considerations involving the exercise of discretion, including balancing the agency's goals with its limited resources such as funding and staffing. The discretionary function "exception was drafted to assure protection for the Government against tort liability for errors in administration or in the exercise of discretionary functions." *Dalehite*, 346 U.S. at 27, 73 S.Ct. at 963. Therefore, because the "propriety of a discretionary administrative act" is not to be "tested through the medium of a damage suit for tort," this claim cannot stand. *Id.* Because discretionary activity is excepted from the limited waiver of sovereign immunity granted by the Federal Tort Claims Act, this Court lacks subject matter jurisdiction to consider a claim based upon such conduct. *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988).

## B. *Inadequate Security Measures*

■ Furthermore, plaintiffs' claim challenging the adequacy of the security measures instituted by the Customs Service at the airport is even more discretionary.[10] The First Circuit in *Brown v. United States*, 790 F.2d 199 (1st Cir.1986), *cert. denied*, 479 U.S. 1058, 107 S.Ct. 938, 93 L.Ed.2d 989 (1987), flatly rejected the notion that a plaintiff can recover by showing that a discretionary function performed by an agency was "inadequate." In *Brown*, the National Weather Service was charged with negligence in processing weather information. In making its forecasts, the Service decided not to include information from a weather-reporting buoy that was

---

**9.** To the extent plaintiffs attempt to distinguish between high-level decisions in general and specific operational decisions involving policy judgments, their argument fails. In *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Supreme Court held that:

the "discretionary function or duty" that cannot form the basis for suit under the Federal Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out operations of government in accordance with official directions cannot be actionable.

*Id.* at 35–36, 73 S.Ct. at 967–68.

**10.** Plaintiffs assert that their claim does not arise out of the kidnapping and murder of their courier, but rather out of the negligence of the two former agents, and "John Richard and William Doe, all Federal Law Enforcement Agents acting within the scope of their employment, [in] fail[ing] to provide and/or negligently provid[ing] the necessary security measures for the currency and monetary assets under their exclusive custody and control."

known to be sporadically malfunctioning. Plaintiffs alleged that the Service should have replaced or repaired the buoy and that its forecasts were inaccurate because they did not include critical information. The failure to do so was alleged to be the proximate cause of the death of certain fishermen who assertedly relied on an inaccurate weather report. The district court concluded that once the system was set in place and mariners began to rely on it, policy judgment was no longer involved. Therefore, the court reasoned, the failure to replace or repair the buoy was not discretionary and provided the basis for the imposition of liability.

The First Circuit flatly rejected this view. Analyzing the flaw in this approach, the court stated:

> Every service that the government offers is presumably intended to benefit some class or classes of persons; ergo, they use; ergo they relied on it; ergo the government induced reliance; ergo the government owed a duty of due care. On this basis, the only parties to whom the discretionary function exception would apply would be who? Non-users? The [district] court has read the discretionary function exception right out by finding it does not apply at precisely the place to which it is particularly directed.

*Id.* at 202. The court noted that the essence of the claim was "that the government's weather predictions were not up to an *adequate* standard because the forecasters *lacked* that *particular information.*" *Id.* (emphasis added). Further, the court noted that in many cases it would not be difficult for the plaintiff to adduce expert testimony that "fully adequate" performance of the function would require more equipment, more advanced technology, or additional personnel. However, as the First Circuit recognized, "[a]ll of these are matters which Congress reserved, both to itself in respect to appropriations, and to the agencies' conduct, by the discretionary function exception." *Id.* at 203. If, in only a small proportion of cases, "parties suffering in consequence succeeded in producing an expert who could persuade a judge ... that the government should have done bet-

ter, the burden on the fisc would be both unlimited and intolerable." *Id.* at 204.

The discretionary nature of government security was recently underlined in *Haygan v. United States*, 627 F.Supp. 749 (D.D.C.1986). There, the plaintiff's vehicle was stolen from a government parking lot during the night. Plaintiff alleged that the defendant was negligent in not providing any security for the lot. In fact, some security was provided, "just not as much as the [plaintiff thought] adequate." *Id.* at 751, n. 2. The court held that the agency's decision to assign only one officer to patrol numerous parking lots on weekends "was beyond question" discretionary activity and could not provide grounds for suit under the FTCA. *Id.*

This conclusion was also reached in *Marbley v. United States*, 620 F.Supp. 811 (D.D.C.1985), a case involving a federal employee who was murdered on government premises while she was performing her job. The plaintiff, decedent's husband, alleged that the Department of Navy had a duty to take reasonable measures to protect the decedent from attack. The court held that "[e]ven if agency authorities possessed knowledge of possible attacks, security measures taken to protect [the decedent] while on duty were discretionary matters within the discretiona[ry] function exception." *Id.* at 813.

Likewise, in *Turner v. United States*, 473 F.Supp. 317 (D.D.C.1979), a custodial supervisor employed by an independent contractor was beaten and robbed while working in a government building. A federal agency provided limited guard service in the building. The plaintiff alleged that the attack was foreseeable due to the number of criminal incidents which had previously occurred in the building. She further alleged that the agency was negligent in not providing adequate security for the building. The court held that the decisions to maintain only two guards and to lower the lighting due to the energy crisis were clearly discretionary acts and thus protected. *Id.* at 320.

As the Supreme Court enunciated in *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), decisions which "require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding" are discretionary. *Id.* at 820, 104 S.Ct. at 2767. It is for that reason that "[j]udicial intervention in such decisionmaking through private tort suits would require the courts to 'second-guess' the political, social, and economic judgments of an agency exercising its regulatory function." *Id.* Entertaining plaintiffs' claim that security measures were "inadequate" would result in "precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent." *Id.*

### CONCLUSION

Although plaintiffs' claim is timely, the acts and/or omissions of Customs agents on duty at the time the courier Lajam was processed through customs were outside the scope of their employment. Such conduct cannot, therefore, provide the basis of tort liability against the United States. Furthermore, the nature and extent of personnel supervision and airport security are discretionary determinations for which the sovereign immunity of the United States has not been waived. Defendant's motion for summary judgment is hereby GRANTED.

SO ORDERED.