**Enrique MERCADO DEL VALLE, et al.,
Plaintiffs, Appellants,**

v.

**UNITED STATES of America,
Defendant, Appellee.**

No. 87–1889.

United States Court of Appeals,
First Circuit.

Heard May 6, 1988.

Decided Sept. 9, 1988.

Jose M. Biaggi Junquera, Santurce, P.R., for plaintiffs, appellants.

Wanda Rubianes–Collazo, Asst. U.S. Atty., and Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., on brief, for defendant-appellee.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

In December 1983, members of the Panthers Military Society, a student organization at the University of Puerto Rico, engaged in severe hazing that led to the death of a recruit, Arnaldo Mercado Perez. Several relatives of Mercado brought this lawsuit against the United States, under the authority of the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1982) (FTCA). They alleged that agents of the United States, namely two members of the Air Force, negligently caused Mercado's death by failing adequately to supervise the Panthers. The key paragraph in their complaint reads as follows:

> Defendant ... was negligent by not preventing the activity held by Panthers Military Society and its members in violation of its duty of care towards the students enrolled in defendant educational programs, as was Arnaldo Mercado Perez, r.i.p., although defendant's representatives had knowledge that in prior similar activities other students had suffered bodily injury and were submitted to negligent tests of their physical and mental condition and/or by not providing adequate medical supervision and/or by not supervising adequately the activity of the Air Force R.O.T.C. program.

The United States moved to dismiss the complaint, and alternatively for summary judgment, arguing that a decision about how closely the Air Force would supervise the activities of an organization like the Panthers is essentially a "discretionary function" which the FTCA exempts from its grant of permission to sue the sovereign. 28 U.S.C. § 2680(a) (exempting "[a]ny claim based upon ... the exercise or performance or the failure to exercise or

perform a discretionary function or duty on the part of ... an employee of the Government, whether or not the discretion involved be abused"). The plaintiffs filed no opposition; they pointed to no "genuine issue as to any material fact" regarding the discretion at issue. Fed.R.Civ.P. 56(c). The district court then granted summary judgment for the defendant, which is not surprising, considering that the Federal Rules require a plaintiff opposing a summary judgment motion to set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *compare* Rule 56(b) (party moving for summary judgment need not submit affidavits supporting the motion). Subsequently, the plaintiffs moved for reconsideration, the United States opposed the reconsideration motion, and each side, for the first time, submitted supporting evidentiary material. The district court denied reconsideration, and plaintiffs now appeal from the denial.

For purposes of this appeal, we treat the papers filed in respect to reconsideration as if they had been filed in respect to summary judgment, for, if plaintiffs do not show in these papers the existence of a "genuine" and "material" dispute of fact in respect to the discretionary function exemption, the district court plainly need not have granted their motion for reconsideration. *See Binkley Co. v. Eastern Tank, Inc.*, 831 F.2d 333, 337 (1st Cir.1987) (appellate court reviews denial of reconsideration motion only for abuse of discretion). We conclude that plaintiffs have not made the required showing.

> The Supreme Court has written that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion.

*United States v. Varig Airlines*, 467 U.S. 797, 811, 104 S.Ct. 2755, 2763, 81 L.Ed.2d 660 (1984) (quoting *Dalehite v. United States*, 346 U.S. 15, 35–36, 73 S.Ct. 956,

968, 97 L.Ed. 1427 (1953)). More recently, the Court has said that "[i]n examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee." *Berkovitz v. United States*, — U.S. —, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). The exemption "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* 108 S.Ct. at 1958; *see, e.g., Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (once government chose to operate and list lighthouse on official chart, it was liable under FTCA for shipwreck caused by failure to repair it). The exemption will apply, however, where there is room for choice and where that permissible choice is "based on considerations of public policy." *Berkovitz*, 108 S.Ct. at 1959. The Court repeated that "where there is room for policy judgment and decision there is discretion." *Id.* 108 S.Ct. at 1959 (quoting *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968).

In applying these standards, the Supreme Court has held, for example, that the discretionary function exemption immunized the decisions of individual Federal Aviation Administration employees executing a system of "spot checking" airplanes for compliance with FAA safety regulations. *Varig*, 467 U.S. at 820, 104 S.Ct. at 2768, *discussed in Berkovitz*, 108 S.Ct. at 1959. The Court has also held that the exemption protects the decision of individual Food and Drug Agency employees to release a dangerous lot of vaccine, provided that the agency's "policies and programs ... allow room for implementing officials to make independent policy judgments" regarding release of a drug. *Berkovitz*, 108 S.Ct. at 1964.

Similarly, this circuit has held that a Coast Guard decision to mark a sunken wreck with a small (3½ foot) buoy, instead of a larger buoy, fell within the exemption. *Chute v. United States*, 610 F.2d 7 (1st Cir.1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980). So did the Weather Bureau's failure to predict a storm, even when based on a malfunction-

ing weather buoy. *Brown v. United States*, 790 F.2d 199 (1st Cir.1986), cert. denied, 479 U.S. 1058, 107 S.Ct. 938, 93 L.Ed.2d 989(1987). Moreover, the Sixth Circuit, in a case quite similar to this one, held that the Army's decision as to how it should supervise new recruits awaiting enlistment was discretionary. Hence, a passerby injured when recruits threw furniture out a window could not recover for negligent supervision. *Carlyle v. United States Department of the Army*, 674 F.2d 554, 557 (6th Cir.1982).

We have examined the evidentiary material in light of these cases. That material suggests that any "supervisory" failure here would have involved discretionary decision making as defined in the case law. Plaintiffs have failed to set forth any facts that might show the contrary.

The affidavits the government submitted show that the relationship between the Air Force R.O.T.C. and the Panthers was a shifting and ambivalent one, the subject of numerous policy decisions. One Air Force memorandum states that because the defendant "does not have the qualified personnel to supervise [Panther] activities," it will not "be responsible for their actions nor circumstances derived from their actions while participating on a Panther encampment or field activity." Another memorandum states that an Air Force officer should serve as Panther "Advisor" only in his capacity as a University of Puerto Rico faculty member, "*not* as a representative of the Air Force." Still another refers to the Panthers as a University of Puerto Rico student organization which the Air Force has not "officially recognized." These memoranda are sufficient to raise an inference that decisions by Air Force personnel as to what Panther activities they should or should not permit, or as to how they should supervise Panther activities, would implicate policy choices.

At the same time, plaintiffs fail to point to any specific factual information that might rebut this inference. They note that Lt. Col. Viscasillas, the Air Force R.O.T.C. commander at the university, said he could have disbanded the Panthers, prohibited the activities that resulted in Arnaldo Mer-

cado's death, and/or had an Air Force officer supervise the Panthers more closely. But the fact that he could have done so in no way indicates that he was *required* to do so by Air Force policy, or rebuts the inference that a decision either way would involve policy making. Plaintiffs also note that Capt. Rosado, the "designated advisor" to the Panthers, said he was aware of various dangerous Panther activities, and he knew there was a problem. But these facts do not effectively rebut the inference that his decisions as Panther advisor were discretionary. Indeed, Rosado suggested the contrary when he said that, although Viscasillas assigned him to supervise, he had discretion as to how to perform his duties in light of the "usual understanding between officers that if the commander doesn't tell you, you won't do this and you'll do that, you assume that you have the ball and you go with it."

Plaintiffs' strongest piece of evidence consists of an Air Force R.O.T.C. "Detachment Operating Instruction 53–15," a document to which plaintiffs did not refer in this court, and which they brought to the district court's attention only by noting that Capt. Rosado "testified ... that he received operating instructions concerning the policy of the Air Force on hazing in the Air Force R.O.T.C. program" and that he did not "follow those instructions." The "Instruction" seeks to prevent hazing in official A.F.R.O.T.C. programs, A.F.R.O.T.C.-sponsored or supported programs, and in programs in which an A.F.R.O.T.C. detachment participates. It requires detachment officers to brief commanders about A.F.R.O.T.C. anti-hazing policy and safety rules, and to make "spot checks" on extracurricular activities.

We do not find the references to this memorandum sufficient to rebut the "discretionary function" inference raised by other documents. In his deposition Capt. Rosado said that the "Instruction" referred to the "Arnold Air Society and the Angels Society," (which apparently are sponsored by the A.F.R.O.T.C.) not to the "Panthers or Blue Eagles." He added that he gave the required briefings. That being so, we can find nothing in the memorandum itself to suggest that when or how to apply A.F.

R.O.T.C. policy to an organization like the Panthers, and when or how to conduct supervisory "spot checks" of their activities, involved other than discretionary, policy-based judgments. *See Varig,* 467 U.S. at 820, 104 S.Ct. at 2768 (the carrying out by FAA inspectors of FAA airplane "spot checks" is a discretionary function).

Plaintiffs point to no other evidence to support their position. That being so, we must draw the conclusion that the record suggests; the governmental decisions complained of fall within the discretionary function exception as articulated in the cases discussed above. We therefore need not reach any of the other potential legal problems plaintiffs may face. *See, e.g., United States v. Shearer,* 473 U.S. 52, 56–57, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985) (FTCA does not cover intentional torts); *Thigpen v. United States,* 800 F.2d 393, 398 (4th Cir.1986) (FTCA does not permit action for negligent supervision of those committing intentional torts); *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950) (person in military service cannot recover for torts arising out of such service).

The judgment of the district court is therefore

AFFIRMED.