**Pamela WOOD and Glenroy Wood, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. Civ. 99–228–B.

United States District Court, D. Maine.

Sept. 15, 2000.

Francis J. Hallissey, Machias, ME, Ralph A. Dyer, Portland, ME, for Pamela Wood, Glenroy Wood, plaintiffs.

James M. Moore, U.S. Attorney's Office, Bangor, ME, for United States, defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS & PLAINTIFFS' MOTION In Limine

SINGAL, District Judge.

Plaintiff Pamela Wood ("Wood") along with her husband, Glenroy Wood, filed claims against Defendant the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* Plaintiffs' claims arise out of injuries Wood sustained while working for an independent contractor at the Naval Computer and Telecommunications Station in Cutler, Maine (the "Cutler Naval Station"). Defendant United States has moved to dismiss, or in the alternative, for summary judgment (Docket # 10). In connection with Defendant's Motion, Plaintiffs have filed a motion in limine seeking to limit Defendant's Motion to a motion for judgment on the pleadings under Rule 12(c) (Docket # 14). In the alternative, if the Court considers Defendant's Motion as a motion for summary judgment, Plaintiffs seek further discovery under Rule 56(f).

For the reasons discussed below, the Court treats Defendant's Motion as a motion for summary judgment and GRANTS Defendant's Motion as to Counts I and IV. On the remaining counts, the Court DENIES Defendant's Motion WITHOUT PREJUDICE and GRANTS Plaintiffs' motion for further discovery pursuant to Rule 56(f).

## I. STANDARD FOR REVIEW

As a preliminary matter, the Court notes that in support of its' Motion Defendant filed a thirty-nine paragraph statement of material facts along with supporting declarations. *See* Statement of Material Facts of the United States of America ("Def.SMF") (Docket # 11). Plaintiffs similarly filed a Responsive Statement of Material Facts supported by their own affidavits and exhibits. *See* Plaintiffs' Responsive Statement of Material Facts ("Pls.SMF") (Docket # 17). Given these plentiful materials outside the pleadings, the Court will construe Defendant's Motion as a motion for summary judgment. *See* Fed.R.Civ.Pro. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment....").[1]

For the purposes of summary judgment, the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995). Summary

---

1. In this case, the conversion of the motion to a motion for summary judgment does not require the Court to give further notice to the parties because the Court finds that both parties had constructive notice. *See Collier v. City of Chicopee,* 158 F.3d 601, 603 (1st Cir. 1998) ("Notice of conversion need not be explicit."), *cert. denied,* 526 U.S. 1023, 119 S.Ct. 1262, 143 L.Ed.2d 358 (1999). Plaintiffs have had an opportunity to respond to the outside materials submitted by the Defendant and have done so by submitting 27 separate affidavits and documents. Additionally, Plaintiff has requested an opportunity for further discovery under Rule 56(f) citing those specific outside materials submitted by Defendant that they are unable to respond to. By this Order, the Court grants Plaintiffs' motion for further discovery and withholds decision on the counts that could rely on Plaintiffs' ability to rebut those outside materials Plaintiffs have claimed they cannot respond to without further discovery.

judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c).

## II. BACKGROUND

In accordance with the standard laid out above, the Court sketches the relevant facts in the light most favorable to the Woods.

In the Spring of 1996, the United States Department of the Navy (the "Navy") decided that the VLF towers located at the Cutler Naval Station (the "towers") were in need of painting and repair. Rather than use Navy employees to work on the towers, which range from 200 to 980 feet high, the Navy solicited bids from various contractors. The Navy then evaluated the bids submitted based on various factors including the contractor's price, technical expertise, corporate management, past experience as well as the safety plan submitted for completing the work on the towers.

In October 1996, the Navy awarded the contract to Abhe & Svoboda, Inc. ("Abhe & Svoboda"), a contractor based in Minnesota. The contract between Abhe & Svoboda and the Navy required Abhe & Svoboda to comply with various safety requirements by developing a safety plan that would provide a safe working environment for its employees. The contract also required Abhe & Svoboda to secure workers' compensation insurance. Pursuant to the contract, Abhe & Svoboda began work on the towers in Spring 1997 (the "1997 construction season"). Abhe & Svoboda employed Wood as a painter on the tower project.

During the 1997 construction season, Abhe & Svoboda had two accidents at the Cutler tower work site. Both accidents involved problems with the scaffolding systems being used to work on the towers. As a result of these accidents, the Occupational Health and Safety Administration ("OSHA") issued Abhe & Svoboda a citation for serious and willful safety violations and imposed a fine.

Prior to starting its work for the 1998 construction season, the Navy requested that Abhe & Svoboda submit a revised safety plan. However, Abhe & Svoboda was allowed to start work without submitting any revision and did not respond to the Navy's request for a revised safety plan until June 1, 1998, the date upon which the Navy had threatened to stop work if the revisions were not received. Throughout the 1998 construction season, the Navy conducted periodic inspections of the Cutler tower work site to determine Abhe & Svoboda's compliance with the contract including the revised safety plan.

On August 23, 1998, Wood was working with a painting crew of Abhe & Svoboda employees on the towers. While attempting to lower scaffolding to paint the next section of the tower, one member of the crew ran into difficulty operating the motorized "man-lift" portion of the scaffolding. Wood attempted to assist the crew member. At that point, the man-lift broke away from the tower and dropped approximately 70 feet. Wood's co-worker was thrown from the manlift and sustained fatal injuries as a result of the fall. Wood remained in the manlift but suffered injuries for which she was hospitalized. Wood claims her injuries have left her permanently disabled. Neither Wood nor her co-worker were wearing safety harnesses, as required under the contract, at the time of the accident.

Immediately following the accident, the Navy suspended Abhe & Svoboda's work on the towers pursuant to its retained

rights under the contract. The suspension remained in effect until September 10, 1998. As a result of the August 23rd accident, Wood filed for and received workers' compensation benefits from Abhe & Svoboda for the injuries she sustained during the course of her employment. Additionally, after exhausting her administrative remedies, she filed a claim against the United States with this Court.

## II. DISCUSSION

### A. The Federal Tort Claims Act ("FTCA")

■ Suits against the United States are generally barred by the doctrine of sovereign immunity. However, the FTCA provides a limited waiver of sovereign immunity allowing some tort claims to proceed against the United States. In this case, the United States argues that Plaintiffs' various claims are barred under the FTCA because the exceptions in the statute apply to Plaintiffs' claims. If a claim falls within an exception to the FTCA, the United States retains its sovereign immunity as to the claim and this Court has no subject matter jurisdiction over the claim. *See* 28 U.S.C. § 1346(b)(1).

### 1. Punitive Damages Exception (Count IV)

■ In relevant part, the FTCA declares:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable ... for punitive damages.

28 U.S.C. § 2674. Because the statute specifically exempts the United States from liability for punitive damages, the United States has not waived its sovereign immunity on claims for punitive damages. Therefore, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' claims for punitive damages and Defendant is entitled to judgment as a matter of law on Count IV of Plaintiffs' complaint.

### 2. Discretionary Function Exception

■ The United States' waiver of sovereign immunity is subject to a number of other exceptions among them is the discretionary function exception. *See* 28 U.S.C. § 2680(a). Under this exception, the United States retains its immunity against claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved is abused." *Id.* There is no subject matter jurisdiction over a claim that falls under the discretionary function exception to FTCA. *See Williams v. United States,* 50 F.3d 299, 305 (4th Cir.1995); *Lesoeur v. United States,* 21 F.3d 965, 967 (9th Cir.1994); *Fazi v. United States,* 935 F.2d 535, 539 (2d Cir.1991).

■ The First Circuit has provided ample guidance in recent years regarding determinations of whether a claim falls under the discretionary function exception. *See Shansky v. United States,* 164 F.3d 688 (1st Cir.1999); *Irving v. United States,* 162 F.3d 154 (1st Cir.1998) (en banc), cert. denied, 528 U.S. 812, 120 S.Ct. 47, 145 L.Ed.2d 41 (1999). Pursuant to these precedents, this Court must first "identify the conduct that allegedly caused the harm." *Shansky,* 164 F.3d at 690. Then, the Court must separately consider two questions: "Is the conduct itself discretionary? If so, is the discretion susceptible to policy-related judgments?" *Id.* at 691.

### a. Negligent Selection of Contractor (Count I)

■ In Count I, Plaintiffs claim that the conduct of the United States that caused Wood's injuries was the Navy's selection of Abhe & Svoboda as the contractor for the tower project. More specifically, Wood alleges that in undertaking review of the bid submitted by Abhe & Svobha the Navy negligently failed to investigate the contractor's workers' compensation insurance history and its history of OSHA violations. (Pls.' Obj. to Mot. of United States to

Dismiss, or in the Alt., for Summ.J. at 9–10.)

The Court concludes that this conduct by the Navy was discretionary. The Navy assessed all of the bids received based on price, technical expertise, corporate management, past experience, and safety plan. For each of these factors, the Navy required bidders to submit specific information. Although the Navy required contractors bidding on the contract to give particular information for evaluation, the Navy ultimately retained the ability to determine which bid would be most advantageous to the Government. The Navy's assessment involved weighing all of the factors based on the bids submitted but did not apply a specific formula to determine which bid would be awarded the contract.

Plaintiffs have not brought to the Court's attention any statute, regulation or policy that governed the evaluation of bids for the tower project or restricted the Navy from awarding the bid to any contractor based on any of the factors considered.[2] Generally, under the FTCA, "a function is non-discretionary only when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Irving*, 162 F.3d at 163 (internal quotations omitted). To the extent Plaintiffs' argue that the Construction Solicitation and Specifications[3] acted as an informal policy binding Navy personnel in their assessment of bids, the Court finds this document similarly left to the Navy's discretion how the various factors would be weighed to determine who was awarded the contract. *See id.* at 164 (explaining that informal policies may sometimes be used to determine whether a function is discretionary). Viewing the evidence in the light most favorable to the Plaintiffs, the Navy may have incorrectly calculated some of the factors it considered and it may have considered unreliable information regarding Abhe & Svoboda's safety history. However, given this Court's conclusion that the review of the bids and the award of the contract was discretionary conduct, what Plaintiffs' evidence points to is an abuse of discretion that is not actionable under the FTCA. *See* 28 U.S.C. § 2680(a).

Having determined that the decision to award the contract to Abhe & Sodova involved discretionary conduct by the Navy, the Court must next determine whether this conduct was susceptible to policy related judgments. In conducting this second prong of the discretionary function inquiry, the Court asks "whether some plausible policy justification could have undergirded the challenged conduct." *Shansky*, 164 F.3d at 692. Given the factors the Navy explicitly considered in its decision as well as its self-declared plan to weigh these factors so as to find "the best value for the Government," (Construction Solicitation and Specifications at 8), the Court would be hard pressed to say that this decision could not have rested upon some policy related judgments by government employees.

Therefore, the Court concludes that the Navy's decision to award the tower contract to Abhe & Svoboda falls under the discretionary function exception of the FTCA.[4] For this reason, the Court finds it

---

2. In fact, the Navy, through its Deputy Director of Contracts for the Northern Division, asserts that "[n]o federal statute, regulation or policy specifically prescribed a course of action in 1996 for the United States Navy to follow in the choice between various offerors for the painting and repair of the VLF towers at the Cutler Naval Station." (Def. SMF ¶ 6.) Plaintiffs' response to this assertion does not cite any governing statute, regulation or policy. (Pls. SMF ¶ 6.)

3. *See* Naval Facilities Engineering Command, Northern Division, U.S. Navy, Paint and Repair VLF Towers: Construction Solicitation and Specifications (May 1996) (Def.Ex.1) (Docket # 15) (hereinafter "Construction Solicitation and Specifications"). In the Contract Solicitation and Specifications, the Navy explained, "the award [of the bid] shall be based on the best value to the government, cost and other factors considered." (*Id.* at 8.)

4. Other courts have similarly held that selection of a contractor is a discretionary activity. *See Williams v. United States*, 50 F.3d 299, 309 (4th Cir.1995); *Layton v. United States*, 984 F.2d 1496, 1501 (8th Cir.1993), *cert. de-*

lacks subject matter jurisdiction over Count I of the Plaintiffs' Complaint.

b. Failure to Take Precautions Against Known Dangers (Counts II & III)

Defendant also argues that Counts II & III rely on conduct by the Navy that falls under the discretionary function exception. Count II alleges that the Navy failed to exercise reasonable care to protect the Abhe & Svoboda employees working at the Cutler Naval Station. *See Restatement (Second) of Torts* §§ 343 & 343A (1965). Specifically, Plaintiffs allege the Navy was negligent in failing to anticipate harm to Abhe & Svoboda employees despite knowledge or obviousness of the risk involved in working on the towers in light of Abhe & Svoboda's failure to institute reasonable safety measures for their employees. The conduct that serves as the basis of Count II is the failure of the Navy to provide a safe work environment by enforcing safety provisions required under the safety plan—whether this failure by Navy personnel amounts to negligence depends upon their knowledge or the obviousness of Abhe & Svoboda's problematic operations prior to August 23, 1998.

■ Count III alleges that the Navy knew the tower project involved a peculiar unreasonable risk of harm to the Abhe & Svoboda employees doing the work and yet failed to exercise its supervisory control with reasonable care. *See Restatement (Second) of Torts* §§ 413 & 414 (1965).[5] Specifically, Plaintiffs allege that Wood's injury resulted from the Navy's failure to shut down Abhe & Svoboda's operations prior to August 23, 1998. In order for the Navy to be liable under Count III, Plaintiffs must prove that the Navy retained some degree of supervisory control over the manner in which Abhe & Svoboda undertook its work on the tower project. The fact that the Navy had "a general right to order the work stopped or resumed, to inspect its progress, or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations, and deviations" is not enough to

*nied* 510 U.S. 877, 114 S.Ct. 213, 126 L.Ed.2d 170 (1993).

5. To the extent Defendant argues that Count III does not state a claim upon which relief can be granted because Maine has not adopted sections 413 and 414 of the Restatement, the Court declines to address this issue prior to determining whether Plaintiff can produce evidence upon which a reasonable jury might find that the Defendant is liable under Count III. This procedure is in accordance with the procedure followed by the Law Court, which to date has not addressed whether there are circumstances under which Maine would adopt the theory of "peculiar risk" liability laid out in Restatement (Second) of Torts §§ 413, 414, 416. *See Dexter v. Town of Norway,* 715 A.2d 169, 171–72 (Me. 1998) ("We are far less certain whether and under what circumstances we would recognize the doctrine ... described as involving 'a peculiar unreasonable risk' (section 413)"); *Legassie v. Bangor Publ'g Co.,* 741 A.2d 442, 447 (Me.1999) (finding the plaintiff could not state a claim under section 416 of the Restatement and that consequently the court "need not determine whether and under what circumstances [the Law Court] would adopt such a cause of action").

Similarly, it is not clear whether the Law Court if it were to adopt "peculiar risk" liability would exempt such claims by employees of independent contractors seeking damages from a landowner/employer. *See, e.g., Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal. Rptr.2d 72, 854 P.2d 721, 731 (1993) (refusing to extend the peculiar risk doctrine to employees of contractors who may collect workers' compensation and citing cases showing that this is the majority position). Given the Law Court's hesitance in dealing with the peculiar risk theory of liability, the Court will not address the issue until the facts are adequately developed and the parties have had an opportunity to brief the Court on analogous decisions by other courts, treatises and public policy considerations necessary for this Court to decide whether it can make an "informed prophecy" or should certify the question to the Law Court. *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1151 (1st Cir. 1996). *See also Trull v. Volkswagen of Am., Inc.,* 187 F.3d 88, 101 (1st Cir.1999) (certifying an issue to the New Hampshire Supreme Court upon finding that the state's position could not be discerned "from review of the state's existing tort law cases").

prove liability under this claim. *See Restatement (Second) of Torts* § 414 cmt.c (1965).

Counts II and III may, in fact, rely upon conduct that was discretionary and susceptible to policy related judgments. *See Ayer v. United States*, 902 F.2d 1038, 1044 n. 4 (1st Cir.1990) (noting that the discretionary function exception can apply to "policy judgments concerning safety precautions"); *Mercado Del Valle v. United States*, 856 F.2d 406, 408 (1st Cir.1988) (finding Air Force's supervision of an unrecognized student group fell within the discretionary function exception). For reasons discussed in greater detail below, the Court finds that Plaintiffs are entitled to conduct further discovery pursuant to its request under Rule 56(f) before the Court rules on whether Counts II & III fall within the discretionary function exception.

3.  Independent Contractor Exception

■ The United States' waiver of sovereign immunity is also subject to the independent contractor exception. *See* 28 U.S.C. § 2671. Under this exception, the United States retains its sovereign immunity when the acts or omissions that serve as the basis for a claim are committed by contractors hired by the United States. *See United States v. Orleans*, 425 U.S. 807, 815, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) (explaining that the test for determining whether the United States is liable for an independent contractor turns on "whether [the contractor's] day-to-day operations are supervised by the Federal Government"). The Court concludes that, based upon the limited factual record, issues of fact remain regarding the level of supervision the Navy provided during the 1998 construction season. Additionally, the

Court finds that Plaintiffs have shown that additional discovery is necessary to determine the Navy's supervisory role.

■ In Counts II & III of their complaint, Plaintiffs allege that the Navy is liable for injuries suffered by Wood because it breached its duties as a landowner and as a supervisor of an independent contractor hired for a project involving a peculiar risk. Thus, Plaintiffs' allegations do not rely on vicarious liability. Rather, they allege that the United States is directly liable because it breached its own duty of care.

Factually, these claims require Plaintiffs to prove (1) Defendant's knowledge of unsafe conditions on the premises or the obviousness of unsafe conditions (Count II) as well as (2) that Defendant retained the requisite level of supervisory control over the tower project during the 1998 construction season (Count III). Defendant has submitted that Navy personnel were not aware of unsafe conditions, had no reason to be aware of any unsafe conditions prior to August 23, 1998, and did not supervise any safety compliance by Abhe & Svoboda. (Def. SMF ¶¶ 21, 25, 29, 30 & 31.) In stating these material facts, Defendant relies on the declarations of various Navy personnel whom Plaintiffs have not had an opportunity to depose. The Court finds that without an opportunity to depose such Navy personnel and conduct other relevant discovery of the scene, Plaintiffs cannot state facts essential to justify their opposition to the Defendant's Statement of Material Facts. *See* Fed. R.Civ.Pro. 56(f). Therefore, the Court finds that Plaintiffs are entitled to conduct further discovery before the Court considers whether any FTCA exception bars Count II or III.[6]

---

**6.** Defendant also argues that it is entitled to summary judgment on Counts II and III because it "exercised reasonable care to protect contract employees from danger" and because "Plaintiff is equally or more at fault than the United States." (Mot. of the United States with Inc. Mem. of Law to Dismiss or in the Alt., the United States Mot. for Summ.J. at 20–21.) The Court declines to grant Defen-

dant's Motion on either ground. After reviewing the partially developed factual record, the Court finds that there are facts upon which a reasonable jury might find that the Defendant did not exercise reasonable care to protect Wood. Similarly, the Court concludes that a reasonable jury might find that Wood was less responsible for her injuries than the United States.

## B. Maine Workers Compensation Act ("MWCA")

 If the Court does not find this case is barred by one of the above discussed exceptions to the FTCA, the Defendant alternatively argues that Wood's claims are barred by Maine's Workers' Compensation Act ("MWCA"), 39–A M.R.S.A. § 101 *et seq.* The MWCA exempts employers from civil actions if they obtain workers' compensation insurance. *See id.* § 104. The act however does not prohibit injured employees from pursuing claims against third parties.

 Stripped to its essence, Defendant's argument requires the Court to determine whether Wood was an employee of the United States or an independent contractor under the Maine Workers' Compensation Act. *See* 39–A M.R.S.A. § 102(11) & (13). If Wood is an independent contractor under the MWCA, then the United States is not exempt from civil actions under 39–A M.R.S.A. § 104. This determination involves seven factors laid out in the statute. *See id.* at § 102(13)(A)–(H). Viewing the limited factual record presented in the light most favorable to the nonmoving party, the Court finds that the "totality of the relationship" between Wood and the Navy shows that the Navy was likely not Wood's employer on August 23, 1998. *Id.* Rather, it appears that Abhe & Svoboda paid Wood, provided immediate supervision and supplied the necessary materials for Wood's work on the Cutler tower project. The Navy, in turn, employed Abhe & Svoboda for the limited purposes laid out under their contract and paid the contractor a flat price to complete the tower project. Thus, the Court finds that Abhe & Svoboda, not the Navy, was Wood's employer for the purposes of the Maine Workers' Compensation Act. Alternatively, without additional discovery, the Court also finds that a material issue of fact exists as to whether Abhe & Svoboda or the Navy exercised "essential control or superintendence" over Wood on August 23, 1998. Therefore, the Court cannot grant summary judgment for the Defendant at this time on the grounds that the Defendant is exempt from Woods' civil action under 39–A M.R.S.A. § 104.

## IV. CONCLUSION

Therefore, the Court GRANTS Defendant's Motion as to Counts I & IV. On the remaining Counts, Defendant's Motion is DENIED WITHOUT PREJUDICE and Plaintiffs' Motion for further discovery under Rule 56(f) is hereby GRANTED.

Additionally, the Court hereby STRIKES Plaintiffs' request for a jury trial pursuant to 28 U.S.C. § 2402.

Pursuant to the Court's order on May 4, 2000, the stay on discovery will be lifted as of September __, 2000.

SO ORDERED.